1  SNELL & WILMER L.L.P.
   Don Bivens (#005134)
2  Nicole E. Sornsin (#027321)
   One Arizona Center
3  400 East Van Buren
   Phoenix, AZ 85004-2202
4  Telephone:  (602) 382-6000
   dbivens@swlaw.com
5  nsornsin@swlaw.com

6  CRAVATH, SWAINE & MOORE LLP
   Daniel Slifkin (*pro hac vice*)
7  David M. Stuart (*pro hac vice*)
   Worldwide Plaza
8  825 Eighth Avenue
   New York, NY 10019
9  Telephone:  (212) 474-1000
   dslifkin@cravath.com
10 dstuart@cravath.com

11 Attorneys for Defendants

12                 UNITED STATES DISTRICT COURT
13                      DISTRICT OF ARIZONA
14

15 Richard Di Donato, Individually and       No. 16-cv-302-NVW
   On Behalf of All Others Similarly
16 Situated,                                  **DEFENDANTS' MOTION TO
                                              DISMISS CLASS ACTION
17               Plaintiff,                   COMPLAINT**

18        v.                                  **ORAL ARGUMENT
                                              REQUESTED**
19 Insys Therapeutics, Inc.; Michael L.
   Babich; Darryl S. Baker; and John N.
20 Kapoor,

21               Defendants.

22
23
24
25
26
27
28

Defendants Insys Therapeutics, Inc. ("Insys" or the "Company"), Michael L. Babich, Darryl S. Baker and John N. Kapoor move to dismiss Plaintiff Richard Di Donato's Class Action Complaint ("Complaint") for failure to state a claim, pursuant to Rules 8, 9, and 12(b)(6) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u *et seq*. ("PSLRA").[1]

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiff's Complaint recycles old allegations of misconduct from a prior securities fraud case against Insys, which settled in December 2015, into a supposedly new case of securities fraud.   Allegations of misconduct that Plaintiff says Insys failed to disclose were well-publicized (including by Insys itself) before the members of the putative class in this case bought shares in the Company.   None of the information disclosed during the Class Period was new news that revealed that the Defendants' statements were false or misleading.   Because Plaintiff's Complaint does not sufficiently plead actionable misstatements, scienter or loss causation, it should be dismissed.

### II.   STATEMENT OF FACTS

On a motion to dismiss, courts may consider "the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice", including prior court filings and the Company's publicly available financial documents.   *See Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1061 & 1064 n.7 (9th Cir. 2008).   Accordingly, solely for this motion, Defendants assume the well-pleaded allegations in the Complaint to be true, but refer also to court submissions and the Company's Securities and Exchange Commission filings, both of which have been in the public domain.   (*See* Defendants' Request for Judicial Notice in Support of the Motion to Dismiss the Complaint filed together with this Motion.)   The

---

[1] Pursuant to the Order entered by the Court on February 3, 2016, Defendants' counsel certify that the parties conferred on March 9, 2016 to determine whether an amendment could cure the deficient Complaint and have been unable to agree that the Complaint is curable by permissible amendment.

1  chronology of relevant events is as follows.

2       **A.**    **Pre-Complaint Period**

3       Insys develops and commercializes medical products designed to help patients

4  address side effects of their disease, treatment or therapy.  (Compl., Dkt. No. 1, ¶ 2.)  One

5  of its products—Subsys—is a fentanyl-based medication that rapidly treats intense

6  episodes of pain that cancer patients often experience and that are not prevented by

7  routine pain medication (called "breakthrough cancer pain").  (*See* Compl. ¶ 26.)  On

8  May 2, 2013, almost two years before the Class Period alleged in the Complaint, Insys

9  filed an amended Registration Statement in connection with its initial public offering of

10  common stock.  ((Ex. 1 (May 8, 2013 Form 8-K); Ex. 2 (May 2, 2013 Registration

11  Statement).)[2]  The Registration Statement informed investors of the risks that could

12  adversely affect the Company's financial performance, including the risks that the

13  Company's employees could engage in misconduct or other improper activities and that

14  the Company could be subject to regulatory actions as a result of infringement of federal

15  and state laws prohibiting fraud and abuse, kickbacks and the submission of false claims.

16  (Ex. 2 at 30, 43-44.)  In addition, the Company informed investors of the risk that its

17  financial performance could be affected by undesirable side effects associated with its

18  products.  (Ex. 2 at 38-39.)  This information was repeated or reaffirmed in every

19  subsequent public quarterly and annual report filed by the Company.  (Exs. 3-14.)

20       Two months after Insys went public, in July 2013, a *Qui Tam* Complaint asserting

21  that the Company had violated federal and state False Claims Acts was unsealed.  (Ex. 15

22  (Complaint, *United States ex rel. Furchak v. Insys Therapeutics, Inc. et al.*, 12-cv-2930

23  (S.D. Tex.)).)  The relator, a former sales professional at the Company, alleged that the

24  Company (i) provided kickbacks to physicians in exchange for prescribing Subsys, (ii)

25

26  ------------------------------

    [2] All "Ex." references herein are to the Exhibits to the Declaration of Nicole

27  Sornsin, which is Exhibit A to Defendants' Request for Judicial Notice in Support of the Motion to Dismiss the Class Action Complaint, filed contemporaneously with this

28  Motion.

promoted off-label usage of Subsys and (iii) improperly encouraged physicians to prescribe Subsys at higher dosages than indicated by the FDA-approved label.  (*Id.* ¶¶ 88-113.)   The relator alleged that the Company paid medical professionals unreasonably large compensation to give presentations concerning Subsys to other medical professionals and that some physicians were chosen as speakers as a reward for prescribing Subsys.  (*Id.* ¶¶ 91-92.)   The relator specifically alleged that he personally had witnessed Michael Babich, who was then the Company's CEO, participate in misconduct.  (*Id.* ¶ 101.)   After the federal government and the states declined to intervene in the case, the relator voluntarily dismissed the *Qui Tam* Complaint.  *United States ex rel. Furchak v. Insys Therapeutics, Inc. et al.*, 12-cv-2930, Dkt. Nos. 15 & 16 (S.D. Tex.).

On December 13, 2013, before the alleged Class Period, the Company filed a Form 8-K and issued a press release to inform investors that it had received a subpoena from the Office of the Inspector General of the Department of Health and Human Services ("HHS") in connection with an investigation of the Company's sales and marketing practices for Subsys.  (Ex. 16 (Dec. 13, 2013 Form 8-K).)

On May 15, 2014 and May 19, 2014, again before the Class Period, two putative class actions were filed against the Company in the District of Arizona; these actions were consolidated and assigned to Judge Snow, and an amended complaint was filed on October 27, 2014.   (Ex. 17 ("Prior Securities Complaint").)   The Prior Securities Complaint alleged that throughout a class period running from November 12, 2013 to May 14, 2014, the Company made false and misleading statements indicating that its strong financial performance was attributable to a motivated sales force and the quality of its Subsys product, when in fact the Company's performance was driven by off-label marketing of Subsys, kickbacks and efforts to persuade doctors to prescribe the medication at higher-than-indicated dosages.  (*Id.* ¶¶ 1, 3.)

The Prior Securities Complaint substantially repeated the earlier *Qui Tam* Complaint's allegations about the kickback scheme operated by the Company and

1    Michael Babich's alleged personal involvement in the scheme.  (*Id*. ¶¶ 110-131.)

2    According to the Prior Securities Complaint, when concerns about the Company's

3    marketing practices were disclosed to the market, the price of shares of common stock in

4    Insys dropped, causing harm to the putative class members.  (*Id.* ¶¶ 26-34.)  The first

5    alleged disclosure was a May 8, 2014, Michigan local news report of a criminal

6    complaint charging a Michigan doctor with Medicare fraud in connection with his

7    prescriptions of Subsys.  (*Id.* ¶¶ 258-59.)  The second alleged disclosure was a May 13,

8    2014, *New York Times* article entitled "Doubts Raised About Off-Label Use of Subsys, a

9    Strong Painkiller", which characterized the Company's marketing practices as aggressive

10   and potentially improper, and which also referenced the then-recent arrest of the

11   Michigan doctor.  (*Id.* ¶¶ 275-76.)   The Prior Securities Complaint noted that on

12   September 12, 2014, the Company filed a Form 8-K announcing that it had received a

13   subpoena from the U.S. Attorney's Office for the District of Massachusetts requesting

14   documents regarding the Company's sales and marketing practices related to Subsys.  (*Id.*

15   ¶ 143.)  The consolidated class action litigation based on the Prior Securities Complaint

16   was settled on May 28, 2015, and was finally terminated on December 7, 2015.  *Larson*

17   *et al. v. Insys Therapeutics Inc. et al.*, 14-cv-0143, Dkt. Nos. 66 & 80 (D. Ariz.).

18        On August 6, 2015, the Company filed its Form 10-Q reporting financial results

19   for the second quarter of 2015.  In that filing, the Company informed investors that a

20   Connecticut-based nurse practitioner, who had participated in the Company's speaker

21   programs, had pleaded guilty to violating the federal Anti-Kickback Statute in connection

22   with payments of approximately $83,000 from the Company.  (Ex. 12 (Aug. 6, 2015

23   Form 10-Q) at 10.)  The Company stated that it was investigating the issue.  (*Id.*)  In the

24   same filing, the Company also informed investors that it had received Civil Investigative

25   Demands from the offices of the Attorneys General of the States of Arizona, Illinois,

26   Massachusetts and Oregon, each seeking documents regarding the Company's sales and

27   marketing practices with respect to Subsys in each State.  (*Id.* at 11.)  The Company

28   further updated investors on these matters in its Form 10-Q filed on November 5, 2015,

1   which also reported the Company's financial results for the third quarter of 2015.  (Ex. 13

2   (Nov. 5, 2015 Form 10-Q) at 11.)

3         **B.**     **The Present Action**

4         On February 2, 2016, Plaintiff filed the Complaint in this case, which alleges that

5   from March 3, 2015 to January 25, 2016 (the "Class Period"), the Company's financial

6   statements and other statements made by Defendants were false and misleading because

7   Defendants failed to inform investors that (i) the Company was engaged in the illegal and

8   improper off-label marketing of Subsys and (ii) certain Insys employees, including

9   Defendant Babich, were involved in an illegal kickback scheme operated for the purpose

10  of increasing prescriptions of Subsys.  (Compl. ¶ 40.)

11  **III.**    **ARGUMENT**

12        **A.**     **Legal Standards**

13           **1.**     <u>General Standards Governing Motions to Dismiss</u>

14        Although the Court assumes, for purposes of a motion to dismiss, that all factual

15  allegations in the complaint are true, the Court "need not . . . accept as true allegations

16  that contradict matters properly subject to judicial notice or by exhibit.  Nor is the court

17  required to accept as true allegations that are merely conclusory, unwarranted deductions

18  of fact, or unreasonable inferences."  *Sprewell v. Golden State Warriors*, 266 F.3d 979,

19  988 (9th Cir. 2001) (citations omitted).

20           **2.**     <u>Pleading Standards in Securities Fraud Cases</u>

21        To state a claim of securities fraud under Section 10(b) of the Securities Exchange

22  Act of 1934 and SEC Rule 10b-5, Plaintiff must allege:  (1) a material misrepresentation

23  or omission of fact; (2) scienter; (3) a connection with the purchase or sale of a security;

24  (4) transaction and loss causation; and (5) economic loss.  *See Zucco Partners, LLC v.*

25  *Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009).  To state a "control person" claim

26  under Section 20(a), Plaintiff must allege:  (1) a primary violation of the securities laws,

27  and (2) that the defendant "exercised actual power or control over the primary violator".

28

*Id.*

Plaintiff must satisfy the heightened pleading requirements imposed by Federal Rule of Civil Procedure 9(b) as well as the PSLRA. *Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156, 1164 (9th Cir. 2009). Rule 9(b) requires a complaint to "state with particularity the circumstances constituting fraud". Similarly, under the PSLRA, the complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed". 15 U.S.C. § 78u-4(b)(1) (2012).

The PSLRA also requires the complaint to "state with particularity facts giving rise to a ***strong inference*** that the defendant acted with the required state of mind" (*i.e.*, scienter). 15 U.S.C. § 78u-4(b)(2) (emphasis added). "To qualify as 'strong' . . . an inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007). "A court must compare the malicious and innocent inferences cognizable from the facts pled in the complaint, and only allow the complaint to survive a motion to dismiss if the malicious inference is at least as compelling as any opposing innocent inference." *Zucco Partners*, 552 F.3d at 991 (citing *Tellabs*, 551 U.S. at 323).

**B.     Plaintiff's Section 10(b) Claim Should Be Dismissed.**

Plaintiff's claim for securities fraud should be dismissed because it fails to plead sufficiently three required elements of a § 10(b) claim:   (1) a misrepresentation or omission of a material fact, (2) scienter and (3) loss causation.

1.     The Complaint Fails to Plead Any Actionable False or Misleading Statements.

Plaintiff fails to plead any misstatements with the particularity required or to explain ***why*** any statements were allegedly false or misleading. Furthermore, Plaintiff challenges statements that are "forward-looking" and thus inactionable as a matter of law.

(a)    <u>The Complaint Does Not Plead With Particularity Why the Challenged Statements Are False or Misleading.</u>

The Complaint challenges statements in four of the Company's SEC filings and related press releases (¶¶ 27-39):

- March 3, 2015, Form 10-K (discussing Subsys' large market share and the Company's efforts to increase market penetration).  (Compl. ¶¶ 27-30.)

- May 11, 2015, Form 10-Q and press release on May 7, 2015 (noting that "Insys had another strong quarter, driven by our twelfth consecutive quarter of Subsys sales growth.  We expect this will remain our largest near-term revenue driver as we advance the many projects in our pipeline through clinical trials and bring them to market."  Also noting that "[b]y continuing to focus our clinical, regulatory and commercial expertise on developing and successfully commercializing innovative products, we expect to deliver long-term value for our shareholders").  (Compl. ¶¶ 33-34.)

- August 6, 2015, Form 10-Q and press release (containing substantially similar language as the May 11, 2015 Form 10-Q and noting that "we are pleased to have submitted the NDA for Dronabinol Oral Solution"). (Compl. ¶¶ 35-36.)

- November 5, 2015, Form 10-Q and press release (containing substantially similar language as the May 2015 and August 2015 reports).  (Compl. ¶¶ 37-39.)

The Complaint alleges that these statements were false and misleading because the "Defendants failed to disclose that:  (i) the Company was engaged in the illegal and improper off-label marketing of Subsys; [and] (ii) certain Insys employees—including Defendant Babich—were complicit in an illegal kickback scheme operated for the purpose of increasing prescriptions of Subsys".  (Compl. ¶ 40.)

Plaintiff fails to plead with particularity what, precisely, was false or misleading about each of these particular statements and why these statements were false or misleading when they were made.  *See* 15 U.S.C. § 78u-4(b)(1) (requiring the Plaintiff to allege with particularity "the reason or reasons why the statement is misleading").  "A litany of alleged false statements, unaccompanied by the pleading of specific facts indicating *why* those statements were false, does not meet this standard."  *Metzler Inv.*,

540 F.3d at 1070 (emphasis added).  Notably, the Complaint does not allege that any of the financial results and other historical facts reported in these statements (*e.g.*, the Subsys market share, revenues, historical sales growth or profitability) were inaccurate. Rather, the Complaint alleges that the Defendants' statements were misleading by implying that the Company's business and operations complied with relevant regulations. Such allegations alone, however, are insufficient as a matter of law.  *See id.* at 1071 (rejecting the allegation that a company's financial statements were false "because they created the overarching impression that the Company was outperforming expectations and continually increasing revenue through legitimate business means").

Moreover, the Company informed investors, in each of its public SEC filings since it went public, of the significant risks associated with employee misconduct in marketing and sales practices and other activity in the highly regulated industry in which the Company operates.  (Ex. 2 at 30, 38-39 & 43-44; Ex. 3 at 38, 44-45 & 48; Ex. 4 at 27; Ex. 5 at 25; Ex. 6 at 41 & 46-48; Ex. 7 at 27; Ex. 8 at 29; Ex. 9 at 29; Ex. 10 at 22, 39, & 43-46; Ex. 11 at 29; Ex. 12 at 29-30; Ex. 13 at 29; Ex. 14 at 36, 40-42.)  The Company addressed these risks in each of its public filings beginning ***before the Class Period*** from the time the Company went public.  (Exs. 2-9.) In addition, the Company informed investors of actual government investigations into the exact employee misconduct about which the Company had warned investors since going public in 2013.  (Ex. 8 at 12; Ex. 9 at 10-11; Ex. 10 at 84-85; Ex. 11 at 11-12; Ex. 12 at 10-11; Ex. 13 at 10-11; Ex. 14 at 85-86; Ex. 16 & Ex. 35.)   When viewed in the context of those contemporaneous and repeated disclosures, there is no reasonable inference that the challenged statements were misleading by omission.  *See In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1414 (9th Cir. 1994) (citing the "unremarkable proposition that statements must be analyzed in context"); *see also Sprewell*, 266 F.3d at 988 (holding that a court need not accept an allegation that is contradicted by documents of which the court may take judicial notice). Accordingly, Plaintiff has failed to plead falsity with sufficient particularity.

(b)      Forward-Looking Statements Are Protected by the Statutory
Safe Harbor.

Many of the statements challenged by Plaintiff are "forward-looking statements" that cannot form the basis of a claim under the securities laws.  The PSLRA provides a "safe harbor" for "forward-looking statements", which are defined to include:  "(A) a statement containing a projection of revenues, income . . . or other financial items; (B) a statement of the plans and objectives of management for future operations . . . ; (C) a statement of future economic performance . . . ;  [and]  (D) any statement of the assumptions underlying or relating to any statement described in subparagraph (A), (B), or (C)".  15 U.S.C. § 78u-5(i)(1).  Defendants "shall not be liable" for any forward-looking statements if:  the statement is "identified as a forward-looking statement, and is accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement" *or* plaintiffs do not adequately plead that the statement was made "with actual knowledge" that the statement was false or misleading.  15 U.S.C. § 78u-5(c)(1); *see In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111-13 (9th Cir. 2010).

The Complaint challenges the following forward-looking statements:

- "Through our ongoing commercial initiatives, we believe we can continue to grow our market share and net revenue for Subsys."  (Compl. ¶ 28.)

- "We believe that we can continue to increase Subsys net product revenue . . ."  (*Id.* ¶ 29.)

- "We expect [Subsys] will remain our largest near-term revenue driver as we advance the many projects in our pipeline through clinical trials and bring them to market."  (*Id.* ¶¶ 33, 35.)

- "[W]e expect to deliver long-term value for our shareholders."  (*Id.*)

- "We . . . see opportunity for further market share gains in the coming quarters."  (*Id.* ¶ 38.)

These are classic forward-looking statements because, when "examined as a whole, the challenged statements related to future expectations and performance".  *Police*

*Retirement Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1059 (9th Cir. 2014).

Each of these forward-looking statements is in the "safe harbor" because it was identified as a forward-looking statement and accompanied by meaningful cautionary statements. In every SEC filing made during the Class Period and on every press release or earnings announcement cited in the Complaint, Insys advised investors that its report or announcement contained forward-looking statements relating to the Company's future prospects. For example, in the 2014 Annual Report, Insys warned investors:

> The information in this Annual Report on Form 10K, or this Form 10K . . .  contains forward-looking statements and information . . . In evaluating these statements, you should specifically consider various factors, uncertainties and risks that could affect our future results or operations as described from time to time in our SEC reports, including those risks outlined under the heading "Risk Factors" in Item 1A of this Form 10K.

(Ex. 10 at 57.) The Company repeated similar warnings in subsequent SEC filings throughout the Class Period. (*See* Exs. 11-13.) The Company also provided cautions in each relevant press release issued by the Company, including those now challenged by Plaintiff. (Exs. 18-29.) These warnings and cautions are similar to the warnings the Ninth Circuit has repeatedly found adequate to put statements within the safe harbor. *See Police Retirement Sys.*, 759 F.3d at 1059 ("I would like to inform you that comments mentioned on today's call may be deemed to contain forward-looking statements. Actual results may differ materially from those expressed or implied, as a result of certain risks and uncertainties. These risks and uncertainties are described in detail in the company's SEC filings."); *In re Cutera*, 610 F.3d at 1112.

In addition, the Company informed investors in its SEC filings that there were "important factors that could cause actual results to differ materially from those in the forward-looking statement." 15 U.S.C. § 78u-5(c)(1)(A); *see Police Retirement Sys.*, 759 F.3d at 1058. In particular, the Company expressly warned investors of the same

regulatory and compliance risks Plaintiff now erroneously contends were concealed.  For example, the 2014 Annual Report warns:

- "[O]ur ability to continue to generate revenues from these products will depend on a number of factors, including, but not limited to . . . our ability to comply with regulatory requirements."  (Ex. 10 at 22.)

- "Our employees may engage in misconduct or other improper activities, including noncompliance with regulatory standards . . . We are exposed to the risk of fraud or other misconduct."  (*Id.* at 39.)

- "In particular, sales, marketing and business arrangements in the healthcare industry are subject to extensive laws and regulations intended to prevent fraud, misconduct, kickbacks, self dealing and other abusive practices.  These laws and regulations may restrict or prohibit a wide range of pricing, false claims, discounting, marketing and promotion, sales commission, customer incentive programs and other business arrangements.  [M]isconduct could also involve . . . illegal promotion of a drug product for off label use, which could result in regulatory sanctions and serious harm to our reputation."  (*Id.*)

These risk factors were repeated or reaffirmed in the Company's subsequent SEC filings throughout the Class Period.  (Exs. 11-13.)

When forward-looking statements are accompanied by such cautionary statements, the statements cannot be used as the basis of a securities law claim and "the state of mind of the individual making the statement is irrelevant".  *In re Cutera*, 610 F.3d at 1112.  Even if this Court were to conclude that these cautions were inadequate, however, the Complaint must allege "facts that would create a strong inference that the defendants made the forecast(s) at issue with actual knowledge that the statement was false or misleading".  *Id.* (citing 15 U.S.C. § 78u-5(c)(1)(B)(i)).  As set forth below, Plaintiff fails to allege facts showing any degree of scienter, much less actual knowledge on the part of any Defendant who made forward-looking statements.  The forward-looking statements challenged in the Complaint are not actionable.

2.    The Complaint Fails to Plead Facts Giving Rise to a "Strong Inference" of Scienter.

Even if the Complaint had pleaded an actionable misstatement, it does not "state with particularity facts giving rise to a strong inference" that any Defendant made a misstatement "intentionally or with deliberate recklessness".  15 U.S.C. § 78u-4(b)(2)(A); *Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 607 (9th Cir. 2014).  In fact, the Complaint contains a single, boilerplate allegation of scienter:

> Defendants had both the motive and opportunity to commit fraud.  They also had actual knowledge of the statements they made, or acted in reckless disregard of the true information known to them at the time.  In so doing Defendants participated in a scheme to defraud and committed acts that operated as a fraud or deceit on purchasers of the Company's common stock during the Class Period.

(Compl. ¶ 58.)  This allegation consists of unsupported conclusions, and thus does not create any strong inference of scienter on the part of any Defendant.  *See Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736, 743 (9th Cir. 2008); *see also Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1035 (9th Cir. 2002) ("[P]laintiffs who plead the required state of mind in general terms of mere 'motive and opportunity' or 'recklessness' fail to meet the PSLRA's heightened pleading requirements"); *Commcn's Workers of Am. Plan for Emps.' Pensions & Death Benefits v. CSK Auto Corp.*, 2007 WL 951968, at \*4 (D. Ariz. Mar. 28, 2007) (finding general allegations about defendants' positions and access to non-public material information insufficient to establish that defendants acted deliberately or recklessly).[3]    Accordingly, Plaintiff has failed to

---

[3]    The only factual allegation in the Complaint potentially related to any Defendant's state of mind is the allegation that Defendant Kapoor stated that Defendant Babich resigned on November 2, 2015, because Babich "was closest to the issues that federal prosecutors were looking at".  (Compl. ¶ 47, p. 12.)  There is only one alleged misstatement occurring after those events:  Insys's third-quarter 2015 results and an accompanying statement by Defendant Kapoor that "We have driven top line revenue expansion with our market-leading brand, Subsys, and see opportunity for further market share gains in the coming quarters."  (Compl. ¶ 38.)  The Complaint does nothing to allege that these statements were false or misleading in light of Kapoor's alleged knowledge concerning Babich.  Accordingly, that allegation therefore does not create any inference of scienter, much less a strong one.

1    sufficiently plead scienter.

2              3.      The Complaint Fails to Plead Loss Causation.

3              The Complaint also fails to plead another essential element of a securities fraud

4    claim:  loss causation.  In *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005),

5    the Supreme Court made clear that Plaintiff must plead a causal link between the

6    misrepresentations and actual economic loss by alleging that the revelation of the

7    misrepresentation caused the price of the security to decrease.  *See id.* at 342-46.

8    Accordingly, Plaintiff must "allege specific statements . . . that were made untrue or

9    called into question by subsequent public disclosures".  *Oregon Public Emps. Ret. Fund*,

10   774 F.3d at 608.

11             The Complaint identifies five specific news articles (so-called "Corrective

12   Disclosures") that Plaintiff claims revealed the "truth" concealed by the alleged

13   misstatements and were allegedly followed by decreases in the market price of the

14   Company's securities:

15   •        An April 24, 2015, article published by the Southern Investigative
16            Reporting Foundation ("SIRF") entitled "Insys Therapeutics and the New
17            'Killing It'", which addressed a purportedly large number of "adverse
              events", including death, suffered by patients using Subsys, and described
18            the allegations in the *Qui Tam* Complaint.  (Compl. ¶¶ 41-42.)  (Ex. 30.)

19   •        A May 20, 2015, article published by Seeking Alpha entitled "Top
              prescribers of Insys Therapeutics' Subsys arrested on drug charges"
20            reporting that two Alabama-based physicians, prescribers of Subsys, had
21            been arrested on healthcare fraud charges.  (*Id.* ¶¶ 43-44.)  (Ex. 31.)

22   •        A June 25, 2015, article published by *The New York Times* entitled "Nurse
              Pleads Guilty to Taking Kickbacks from Drug Maker", which reported on
23            the Connecticut nurse practitioner, described above, pleading guilty to
24            receiving illegal payments in exchange for writing Subsys prescriptions.
              (*Id.* ¶¶ 45-46.)  (Ex. 32.)

25   •        A December 3, 2015, article published by SIRF entitled "Murder
26            Incorporated:  Insys Therapeutics, Part I", alleging that Michael Babich had
              been forced to resign by John Kapoor, the Company's chairman, and that
27            the Company was operating an illegal kickback scheme to promote off-
28            label marketing of Subsys.  (*Id.* ¶¶ 47-48.)  (Ex. 33.)

- A January 25, 2016, article published by SIRF entitled "The Brotherhood of Thieves: Insys Therapeutics", which alleged that the Company was continuing to engage in improper off-label marketing of Subsys. (*Id.* ¶¶ 49-50.) (Ex. 34.)

In fact, however, many of these so-called Corrective Disclosures identified by Plaintiff simply repeated allegations that were contained in the *Qui Tam* Complaint or in the Prior Securities Complaint and thus were not new news. For example, Plaintiff's first supposed Corrective Disclosure, an article published by SIRF on April 24, 2015, extensively quotes or paraphrases allegations contained in both Complaints, including allegations concerning kickbacks, off-label marketing of Subsys and efforts to persuade physicians to prescribe a higher-than-indicated dose. (Ex. 30.) The Prior Securities Complaint, which was filed in 2014, had been public long before the Class Period. Indeed, the Company described the allegations in the underlying litigations in its August 12, 2014, Form 10-Q and in subsequent SEC filings. (Exs. 8-14.)[4] The Prior Securities Complaint, in turn, repeated many of the allegations from the earlier *Qui Tam* Complaint that had become public in July 2013, again well before the beginning of the Class Period. In particular, the allegation that Defendant Babich was involved in improper conduct had already been made in both of the prior Complaints. (Ex. 15 ¶ 101; Ex. 17 ¶ 111.)

As another example, Plaintiff's fourth Corrective Disclosure, a SIRF article published on December 3, 2015, describes allegations that the Company's "prior authorization unit" provided false information to pharmacy benefit managers so that they would cover Subsys, and those allegations are repeated in Plaintiff's fifth Corrective Disclosure, a SIRF article published on January 25, 2016. (Exs. 33, 34.) But those allegations were also recycled from the Prior Securities Complaint, which even refers to a confidential witness who allegedly worked in the "prior authorization unit" and witnessed

---

[4] The first Corrective Disclosure also refers to instances of adverse events associated with Subsys being reported to the FDA. The Company had warned investors on several occasions, both prior to and during the Class Period, of the risk that patients taking Subsys might suffer side effects. (*See, e.g.,* Ex. 6 (March 5, 2014 Form 10-K) at 48; Ex. 10 (March 3, 2015 Form 10-K) at 45-46.) In addition, the information contained in the article concerning potential adverse effects did not make untrue or call into question any of the prior alleged misstatements.

1    improper conduct.  (Ex. 17 ¶¶ 84, 85.)

2         In addition, many of Plaintiff's Corrective Disclosures refer to governmental

3    investigations of Insys or its employees that were not new.  For example, the first

4    Corrective Disclosure referred to investigations initiated by HHS and a "grand jury that

5    has been empaneled in Boston".  (Ex. 30.)  The second Corrective Disclosure, a May 20,

6    2015 Seeking Alpha article, stated that "[i]n September, the Massachusetts Attorney

7    General issued a subpoena requesting documents pertaining to its commercial practices

8    supporting Subsys."  (Ex. 31.)  (Although the article refers to a subpoena from the

9    "Massachusetts Attorney General", it is presumably referring to the subpoena from the

10   United States Attorney for the District of Massachusetts issued September 8, 2014.)

11   However, the Company previously had informed investors about the Massachusetts U.S.

12   Attorney's investigation on September 12, 2014, before the Class Period (Ex. 35

13   (Sept. 12, 2014 Form 8-K)), and previously had informed investors about the HHS

14   investigation on December 13, 2013, nearly 17 months prior to the article's publication

15   and well before the Class Period.  (Ex. 16 (Dec. 13, 2013 Form 8-K).)  In fact, Plaintiff's

16   second Corrective Disclosure noted that "Insys has been under scrutiny for some time for

17   its Subsys marketing practices".  (Ex. 31.)  The existence of those investigations was not

18   new news.[5]  Further, for the same reasons discussed above in Part III.B.1, Plaintiff fails to

19   plead how the governmental investigations revealed that Defendants' descriptions of the

20   Company's financial situation were false or misleading.  *See Metzler Inv.*, 540 F.3d

21   at 1071.

22        Other information reported in the Corrective Disclosures concerned

23   contemporaneous events that the Company could not have previously disclosed, and

24   which did not reveal that any of the Defendants' prior alleged misstatements were false or

25

26        [5] In discussing the Seeking Alpha article, the Complaint (¶ 43) focuses on the
     indictment of two physicians who wrote prescriptions for Subsys.  According to the
27   article, the indictment alleged that the physicians dispensed controlled substances
     "outside professional practice and not for legitimate medical purpose".  (Ex. 31.)  But
28   there are no allegations of misconduct by Insys in the article's description of the
     indictment.

misleading.  Plaintiff's third Corrective Disclosure, a June 25, 2015, article published by *The New York Times*, reported that Connecticut nurse-practitioner Heather Alfonso (who was not an Insys employee) pleaded guilty to charges of violating the federal Anti-Kickback Statute.  (Ex. 32.)  In its next Form 10-Q, the Company disclosed this guilty plea as a development in the ongoing federal investigations.[6]  (Ex. 12 (Aug. 6, 2015 Form 10-Q) at 10.)   Similarly, Plaintiff's fourth Corrective Disclosure, an article published December 3, 2015, asserted that "Defendant Babich had been forced to resign from the Company".  (Compl. ¶ 47.)  However, Defendant Babich's resignation had just occurred, and the Company promptly informed investors of it.  (Ex. 13 (Nov. 5, 2015 Form 10-Q) at 30.)

Because none of the Corrective Disclosures alleged by Plaintiff contained new news that revealed that the alleged misstatements were false or misleading, Plaintiff has failed to plead loss causation.

## C.  Plaintiff's Section 20(a) Claim Must Be Dismissed.

Because Plaintiff fails to state a claim for violation of § 10(b), Plaintiff's claim under § 20(a) necessarily fails as well.  Section 20(a) provides for joint and several liability for "[e]very person who, directly or indirectly, controls any person liable under" the securities laws or SEC rules thereunder.  15 U.S.C. § 78t(a).  To state a claim of "control person liability" under § 20(a), therefore, Plaintiff must allege:  (1) "a primary violation of federal securities law" and (2) that "the defendant exercised actual power or control over the primary violator".  *Zucco Partners, LLC*, 552 F.3d at 990.  As explained above, Plaintiff has failed in several respects to allege a primary violation of § 10(b) and Rule 10b-5; thus, the § 20(a) claim fails on the first prong.  *See, e.g.*, *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1206 n.2 (9th Cir. Feb. 1, 2016) (explaining that liability under § 20(a) "rises or falls with the primary violation claim").

---

[6] The Company disclosed this guilty plea once again in its subsequent (and most recent) Form 10-Q, along with a description of remedial measures the Company had taken after a review by its board's Compliance Committee and outside counsel.  (Ex. 13 (Nov. 5, 2015 Form 10-Q) at 11; *see also* Ex. 14 (Feb. 29, 2016 Form 10-K) at 85.)

1   **IV.    CONCLUSION**

2          For all the foregoing reasons, the Complaint should be dismissed.

3   DATED:  March 15, 2016

4

5                                              SNELL & WILMER L.L.P.

6                                              s/Nicole E. Sornsin

7                                              Don Bivens
                                               Nicole E. Sornsin

8                                              One Arizona Center

9                                              400 E. Van Buren
                                               Phoenix, AZ 85004-2202

10

11                                             CRAVATH, SWAINE & MOORE LLP
                                               Daniel Slifkin

12                                             David M. Stuart
                                               Worldwide Plaza

13                                             825 Eighth Avenue
                                               New York, NY 10019

14

15                                             *Attorneys for Defendants*

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on March 15, 2016, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Francis J. Balint, Jr.
Andrew S. Friedman
BONNETT FAIRBOURN FRIEDMAN & BALINT, P.C.
2325 E. Camelback Road, Suite 300
Phoenix, Arizona  85016
Attorneys for Plaintiff

s/Jennifer Thomes
23686781