**KESSLER TOPAZ**
**MELTZER & CHECK, LLP**
Andrew L. Zivitz
azivitz@ktmc.com
Johnston de F. Whitman, Jr.
jwhitman@ktmc.com
Jonathan F. Neumann
jneumann@ktmc.com
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

-and-

Jennifer L. Joost
jjoost@ktmc.com
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone: (415) 400-3000
Facsimile: (415) 400-3001

*Lead Counsel for Lead Plaintiff, Class*
*Representative, and the Class*

**BONNETT, FAIRBOURN,**
**FRIEDMAN & BALINT, P.C.**
Francis J. Balint, Jr.
fbalint@bffb.com
Andrew S. Friedman
afriedman@bffb.com
2325 E. Camelback Road, Suite 300
Phoenix, AZ 85016
Telephone: (602) 274-1100
Facsimile: (602) 274-1199

*Liaison Counsel for Lead Plaintiff,*
*Class Representative, and the Class*

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Richard Di Donato, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>Insys Therapeutics, Inc.; Michael L. Babich; Darryl S. Baker; and John N. Kapoor,<br><br>Defendants. | No. 16-cv-00302-NVW<br><br>**CLASS ACTION**<br><br>**CLASS REPRESENTATIVE'S MOTION FOR FINAL APPROVAL OF SETTLEMENT WITH DEFENDANT DARRYL S. BAKER AND PLAN OF ALLOCATION; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |

# **TABLE OF CONTENTS**

**Page**

I.    PRELIMINARY STATEMENT ........................................................................1

II.   THE BAKER SETTLEMENT WARRANTS FINAL APPROVAL .................3

    A.   Class Representative and Class Counsel Have Adequately
        Represented the Class in this Action..................................................5

    B.   The Settlement Was Negotiated at Arm's-Length .................................6

    C.   The Settlement Provides the Class Adequate Relief,
        Considering the Costs, Risks, and Delay of Litigation and Other
        Relevant Factors ...................................................................................7

        1.   The Amount Offered in Settlement.................................................8

        2.   The Risks of Continued Litigation..................................................9

        3.   The Complexity, Expense, and Duration of Continued
            Litigation ....................................................................................11

        4.   The Extent of Discovery Completed and Stage
            of Proceedings...........................................................................12

        5.   Presence of a Governmental Participant ......................................13

        6.   The Reaction of Class Members ..................................................13

    D.   The Remaining Rule 23(e)(2) Factors Support Final Approval ...........14

III.  THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION...........15

IV.   NOTICE OF THE BAKER SETTLEMENT SATISFIED
    RULE 23 AND DUE PROCESS ........................................................16

V.    CONCLUSION ..............................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Amgen, Inc. Sec. Litig.*,
2016 WL 10571773 (C.D. Cal. Oct. 25, 2016)...............................................12, 13, 15

*Ansell v. Laikin*,
2012 WL 13034812 (C.D. Cal. July 11, 2012)..........................................................16

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ...............................................................11

*In re Apollo Grp. Inc. Sec. Litig.*,
2012 WL 1378677 (D. Ariz. Apr. 20, 2012) .............................................................17

*In re Audioeye, Inc., Sec. Litig.*,
2017 WL 5514690 (D. Ariz. May 8, 2017) ...............................................................16

*Campbell v. Facebook, Inc.*,
951 F.3d 1106 (9th Cir. 2020) .....................................................................................4

*In re Celera Corp. Sec. Litig.*,
2015 WL 7351449 (N.D. Cal. Nov. 20, 2015) ..........................................................11

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) .................................................................................10-11

*In re Chrysler-Dodge-Jeep Ecodiesel® Mktg., Sales Practices, & Prods.*
*Liab. Litig.*,
2019 WL 2554232 (N.D. Cal. May 3, 2019).................................................................5

*Churchill Vill., L.L.C. v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004) ..........................................................................4, 6, 7, 11

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992) ...............................................................................4-5, 15

*de Rommerswael v. Auerbach*,
2018 WL 6003560 (C.D. Cal. Nov. 5, 2018)................................................................6

*Destefano v. Zynga, Inc.*,
2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ...............................................................8

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974)...................................................................................................16

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ............................................................... 8

*In re Google LLC St. View Elec. Commc'ns Litig.*,
   2020 WL 1288377 (N.D. Cal. Mar. 18, 2020) ........................................ 13

*Hartless v. Clorox Co.*,
   273 F.R.D. 630 (S.D. Cal. 2011) ............................................................ 12

*Hefler v. Wells Fargo & Co.*,
   2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) ......................................... 16

*In re Heritage Bond Litig.*,
   2005 WL 1594403 (C.D. Cal. June 10, 2005) .....................................11-12

*In re Hyundai & Kia Fuel Econ. Litig.*,
   926 F.3d 539 (9th Cir. 2019) .................................................................... 3

*Jaffe Pension Plan v. Household Int'l., Inc.*,
   No. 02-cv-5893 (N.D. Ill. May 7, 2009), ECF No. 1611 ........................ 12

*Jaffe Pension Plan v. Household Int'l., Inc.*,
   No. 02-cv-5893 (N.D. Ill. Nov. 10, 2016), ECF No. 2267 ...................... 12

*Juvera v. Salcido*,
   2013 WL 6628039 (D. Ariz. Dec. 17, 2013) ........................................3-4

*Kmiec v. Powerwave Techs., Inc.*,
   2016 WL 5938709 (C.D. Cal. July 11, 2016) ......................................... 13

*Knapper v. Cox Commc'ns, Inc.*,
   329 F.R.D. 238 (D. Ariz. 2019) ................................................................ 5

*Lane v. Facebook, Inc.*,
   696 F.3d 811 (9th Cir. 2012) .................................................................... 5

*In re LinkedIn User Privacy Litig.*,
   309 F.R.D. 573 (N.D. Cal. 2015)........................................................ 12, 13

*Moreno v. S.F. Bay Area Rapid Transit Dist.*,
   2019 WL 343472 (N.D. Cal. Jan. 28, 2019) ............................................ 7

*Morgan v. Childtime Childcare, Inc.*,
   2020 WL 218515 (C.D. Cal. Jan. 6, 2020) ............................................ 13

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
   339 U.S. 306 (1950)................................................................................ 16

*Nguyen v. Radient Pharms. Corp.*,
    2014 WL 1802293 (C.D. Cal. May 6, 2014) ....................................................... 15, 16

*Officers for Justice v. Civil Serv. Comm'n of the City & Cty. of S.F.*,
    688 F.2d 615 (9th Cir. 1982) ................................................................... 7, 8

*In re OmniVision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) .......................................................... 9, 11, 14

*In re Oracle Sec. Litig.*,
    1994 WL 502054 (N.D. Cal. June 18, 1994) ................................................. 15

*In re Polaroid ERISA Litig.*,
    240 F.R.D. 65 (S.D.N.Y. 2006) ................................................................... 5

*Rodriguez v. Bumble Bee Foods, LLC*,
    2018 WL 1920256 (S.D. Cal. Apr. 4, 2018) .................................................. 6, 7, 8

*Schaffer v. Litton Loan Servicing, LP*,
    2012 WL 10274679 (C.D. Cal. Nov. 13, 2012) ............................................. 8

*Taylor v. Shippers Transp. Express, Inc.*,
    2015 WL 12658458 (C.D. Cal. May 14, 2015) ............................................. 6

*Velazquez v. Int'l Marine & Indus. Applicators, LLC*,
    2018 WL 828199 (S.D. Cal. Feb. 9, 2018) ................................................... 9

*In re Vivendi Universal, S.A. Sec. Litig.*,
    No. 02-cv-5571 (S.D.N.Y. Feb. 2, 2010), ECF No. 998 .............................. 12

*In re Vivendi Universal, S.A. Sec. Litig.*,
    No. 02-cv-5571 (S.D.N.Y. May 9, 2017), ECF No. 1317 ............................ 12

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab.*
    *Litig.*,
    895 F.3d 597 (9th Cir. 2018) ...................................................................... 3

*In re Wireless Facilities, Inc. Sec. Litig. II*,
    2008 WL 11338455 (S.D. Cal. Dec. 19, 2008) ........................................... 16

*Young v. LG Chem Ltd.*,
    783 F. App'x 727 (9th Cir. 2019) ............................................................... 17

**Statutes**

15 U.S.C. § 78u-4(a) .................................................................................... 14, 17

1

**Other Authorities**

2

Janeen McIntosh & Svetlana Starykh, *Recent Trends in Securities Class
Action Litigation: 2019 Full-Year Review*, NERA Economic Consulting
(Feb. 12, 2020), http://www.nera.com/content/dam/nera/publications/
2020/PUB_Year_End_Trends_012120_Final.pdf ..........................................................2

Fed. R. Civ. P. 23 .............................................................................................*passim*

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Court-appointed Class Representative Clark Miller, on behalf of himself and the Court-certified Class, respectfully moves this Court, pursuant to Federal Rule of Civil Procedure ("Rule") 23, for: (i) final approval of the proposed settlement of this securities class action with Darryl S. Baker on the terms set forth in the Stipulation and Agreement of Settlement Between Lead Plaintiff and Defendant Darryl S. Baker dated May 22, 2020 (Doc. 341-1) ("Stipulation"); and (ii) approval of the proposed plan for allocating the net proceeds of the Settlement to the Class ("Plan of Allocation" or "Plan").[1]

## I.      PRELIMINARY STATEMENT

Subject to Court approval, Class Representative, through his counsel, has agreed to settle all claims asserted in the Action against defendant Darryl S. Baker ("Mr. Baker") in exchange for a cash payment of $2 million ("Settlement" or "Baker Settlement"). Class Representative respectfully submits that the Settlement is a favorable result for the Class, providing a certain recovery in a case that presented numerous hurdles and risks.

The Baker Settlement is the first of three settlements reached in the Action, and represents the largest portion of the *guaranteed* collective cash recovery for the Class.[2] The $2 million Settlement Amount represents more than 50% of the insurance coverage available to Mr. Baker in connection with the Action—i.e., $3.96 million remaining from a $5 million policy. ¶ 10. Indeed, had the Settling Parties not settled at this juncture, a significant portion of the remaining insurance would have been consumed funding Mr.

---

[1]      All capitalized terms not defined herein have the meanings ascribed to them in the Stipulation or in the Declaration of Johnston de F. Whitman, Jr. in Support of (I) Class Representative's Motion for Final Approval of Settlement with Defendant Darryl S. Baker and Plan of Allocation; and (II) Class Counsel's Motion for Reimbursement of Litigation Expenses ("Whitman Declaration"). The Whitman Declaration is an integral part of this submission and contains details pertaining to, among other things: the claims asserted (¶¶ 12-15); the procedural history of the Action (¶¶ 16-77); the negotiations leading to the Settlement (¶¶ 78-79); the risks of continued litigation with Mr. Baker (¶¶ 84-103); compliance with the Court's Preliminary Approval Order and the reaction of the Class to date (¶¶ 104-108); and the Plan of Allocation (¶¶ 109-116). Citations to "¶ __" herein refer to paragraphs in the Whitman Declaration. Unless otherwise noted, all internal citations and quotations are omitted.

[2]      The Baker Settlement combined with the Kapoor and Babich Settlements provide for a Class recovery of at least $2.95 million, with the potential to increase to up to $12.25 million, and will resolve this Action in its entirety.

1

Baker's defense at trial, and given his financial situation, the possibility of obtaining anything from Mr. Baker's personal resources (outside of insurance) was highly unlikely.[3] The Settlement Amount also represents a meaningful portion of the Class's aggregate damages (i.e., $34.7 million to $189.5 million), as estimated by Class Representative's damages expert. ¶ 10. This percentage of recovery range—between 6% and 1%—is directly in line with the median ratio of securities class action settlements to investor losses in recent years as reported by NERA Economic Consulting.[4] And, when considered in light of the likelihood that Mr. Baker's share of any judgment in the Class's favor would be reduced in accordance with the PSLRA's proportional fault provisions, the foregoing percentage of recovery range increases significantly.

As detailed in the Whitman Declaration, this Action was actively litigated for over four years, through a comprehensive investigation, the completion of fact and expert discovery, hard-fought motion practice, trial preparation, and mediation efforts. ¶¶ 16-77. At the time of settlement, the parties were awaiting the Court's ruling on defendants' Summary Judgment Motion. In reaching the Settlement, Class Representative and Class Counsel carefully considered that motion as well as the risks of taking the Action through trial against Mr. Baker. Mr. Baker would likely assert significant defenses to liability and damages that could have resonated with a jury. Notably, Mr. Baker was the only individual defendant in this matter not criminally prosecuted in connection with Insys' off-label promotion of Subsys, and he steadfastly maintained throughout the Action that the alleged fraud was carried out by defendants John N. Kapoor and Michael L. Babich, largely through sales and marketing employees for whom Mr. Baker (as CFO) had no

---

[3] *See* Doc. 260 (Aug. 9, 2019 Transcript), at 25:6-19 and 26:6-13 (counsel advising the Court that if Mr. Baker could not obtain insurance, Class Representative would be "essentially chasing a dry hole").

[4] *See* Janeen McIntosh & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2019 Full-Year Review*, NERA Economic Consulting, 20 (Feb. 12, 2020), https://www.nera.com/content/dam/nera/publications/2020/PUB_Year_End_Trends_01 2120_Final.pdf (finding between 2015 and 2018, the median ratio of settlements to investor losses increased from 1.6% in 2015 to 2.6% in 2018 and declined to 2.1% in 2019).

supervisory responsibility. ¶ 90. The Settlement avoids these litigation risks (and others) as well as the significant additional costs and delay of a trial, post-trial motion practice, and the likely appeals from any Class verdict, while providing a certain and timely benefit to the Class.

In its June 5, 2020 Preliminary Approval Order, the Court preliminarily approved the Baker Settlement, finding it likely to be finally approved as fair, reasonable, and adequate to the Class. Doc. 347, ¶ 1. The Settlement has the full support of Class Representative, and the reaction of the Class to date has been positive. While the deadline to submit objections has not yet passed, following the dissemination of more than 29,800 Postcard Settlement Notices and 4,100 Settlement Notices to Class Members and Nominees as well as publication of a summary notice online and in high-circulation media, not a single Class Member has objected to the Settlement or Plan of Allocation. ¶¶ 11, 108.

Class Representative and Class Counsel respectfully submit that: (i) the Settlement meets the standards for final approval under Rule 23, and is a fair, reasonable, and adequate result for the Class; and (ii) the Plan of Allocation is a fair and reasonable method for equitably distributing the Net Settlement Fund.

## II.   THE BAKER SETTLEMENT WARRANTS FINAL APPROVAL

Rule 23(e)(2) requires judicial approval of any class action settlement. Whether to grant such approval lies within the district court's sound discretion. *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 895 F.3d 597, 611 (9th Cir. 2018) ("[d]eciding whether a settlement is fair is ultimately 'an amalgam of delicate balancing, gross approximations and rough justice,' . . . best left to the district judge, who has … a firsthand grasp of the claims, the class, the evidence, and the course of the proceedings"). Such discretion should be guided by this Circuit's "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019); *Juvera v. Salcido*, 2013 WL 6628039, at *9 (D. Ariz. Dec. 17, 2013) ("The Ninth Circuit has

declared that a strong judicial policy favors settlement of class actions.").

"Under . . . [Rule] 23(e)(2), a district court may approve a class action settlement only after finding that the settlement is fair, reasonable, and adequate." *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1120-21 (9th Cir. 2020). In making that determination, Rule 23(e)(2) provides that a court should consider whether:

> (A)    the class representatives and class counsel have adequately represented the class;
>
> (B)    the proposal was negotiated at arm's length;
>
> (C)    the relief provided for the class is adequate, taking into account:
>
> > (i)    the costs, risks, and delay of trial and appeal;
> >
> > (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> >
> > (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and
> >
> > (iv)    any agreement required to be identified under Rule 23(e)(3); and
>
> (D)    the proposal treats class members equitably relative to each other.

Consistent with this guidance, the Ninth Circuit has identified similar factors for courts to consider in deciding whether to approve a class action settlement:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).[5] Moreover, in approving a settlement, a court "need not reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce

---

[5]    "District courts may consider some or all of these factors." *Campbell*, 951 F.3d at 1121.

consensual settlements." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992); *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012).

At the preliminary approval stage, this Court considered the Rule 23(e)(2) factors in assessing the Baker Settlement and found it to be fair, reasonable, and adequate, subject to further consideration at the Settlement Fairness Hearing. Doc. 347, ¶ 1. The Court's conclusion on preliminary approval applies equally now. *See In re Chrysler-Dodge-Jeep Ecodiesel® Mktg., Sales Practices, & Prods. Liab. Litig.*, 2019 WL 2554232, at *2 (N.D. Cal. May 3, 2019) (finding "conclusions [made in granting preliminary approval] stand and counsel equally in favor of final approval now"). Accordingly, as set forth herein, the Settlement is fair, reasonable, adequate, and warrants final approval under the Rule 23(e)(2) factors and Ninth Circuit law.

### A. Class Representative and Class Counsel Have Adequately Represented the Class in this Action

In determining whether to approve a class action settlement, the court first considers whether "class representatives and class counsel have adequately represented the class." Rule 23(e)(2)(A). The adequacy requirement is satisfied if the representative parties and counsel have fairly and adequately protected the interests of the class. *See Knapper v. Cox Commc'ns, Inc.*, 329 F.R.D. 238, 243 (D. Ariz. 2019). Here, Class Representative and Class Counsel have adequately represented the Class in both their prosecution of the Action and in achieving the Settlement.

Class Representative has claims that are typical of other Class Members, all of which are based on a common course of alleged wrongdoing by defendants. Class Representative also has no interests antagonistic to the Class.[6] Moreover, Class Representative devoted considerable time and effort to the Action, including by, *inter alia*, reviewing key pleadings and motions, gathering documents in response to

---

[6]     *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members.").

defendants' discovery requests, and preparing and sitting for a deposition in furtherance of class certification. *See* Miller Decl., ¶ 4. Likewise, Class Counsel has actively litigated this Action for over four years and has expended the resources necessary to finance every aspect of its prosecution. ¶¶ 118-121.[7] In recommending the Settlement to Class Representative, Class Counsel considered the strengths and weaknesses of its case, the risks, costs, and delays of trial, and Mr. Baker's ability to fund a settlement or judgment greater than the Settlement Amount.

In sum, Class Representative and Class Counsel adequately represented the Class's interests in this Action. After prosecuting the Class's claims for more than four years, Class Representative and Class Counsel firmly believe the Baker Settlement represents a favorable result for the Class, warranting approval. ¶10; Miller Decl., ¶ 6; *see also, e.g., Churchill*, 361 F.3d at 576-77 (instructing courts to consider the "*experience and views of counsel*") (emphasis in original).[8]

## B.    The Settlement Was Negotiated at Arm's-Length

In the Ninth Circuit, a "strong presumption of fairness" attaches to a class action settlement reached through arm's-length negotiations between "experienced and well-informed counsel." *de Rommerswael v. Auerbach*, 2018 WL 6003560, at *3 (C.D. Cal. Nov. 5, 2018); *Taylor v. Shippers Transp. Express, Inc.*, 2015 WL 12658458, at *10 (C.D. Cal. May 14, 2015) ("A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair."). Here, settlement negotiations were undertaken by experienced counsel on both sides, each with a well-developed understanding of the strengths and weaknesses of their respective claims and defenses. Following their August 2018 mediation before retired federal Judge Layn R. Phillips—which did not resolve any portion of the Action—the parties continued to aggressively litigate the case. ¶¶ 78-79.

---

[7]     *See also* Exhibit 3-A to the Whitman Declaration.

[8]     "Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. This is because parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *Rodriguez v. Bumble Bee Foods, LLC*, 2018 WL 1920256, at *4 (S.D. Cal. Apr. 4, 2018).

Thereafter, in January 2020, following nearly two years of additional litigation efforts and while briefing on defendants' Summary Judgment Motion was ongoing, Class Representative and Mr. Baker restarted their earlier settlement discussions. *Id.* Following months of hard-fought negotiations, including concerning the availability of insurance coverage, Class Representative agreed to resolve the Action against Mr. Baker. *Id.* Even after agreeing to the material terms of the Settlement set forth in the May 8, 2020 term sheet, the Settling Parties spent additional weeks negotiating the specific terms of the Stipulation (while preparing for trial) before moving for preliminary approval. ¶¶ 80-81. It is unquestionable that this Settlement is "not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Officers for Justice v. Civil Serv. Comm'n of the City & Cty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982).

C.   **The Settlement Provides the Class Adequate Relief, Considering the Costs, Risks, and Delay of Litigation and Other Relevant Factors**

The remaining Rule 23(e)(2) factors overlap considerably with those articulated by the Ninth Circuit, and all entail "a 'substantive' review of the terms of the proposed settlement" that evaluate the fairness of the "relief that the settlement is expected to provide to" the Class. *See* Rule 23(e)(2), advisory comm.'s note to 2018 amendments; *Churchill*, 361 F.3d at 575-77. To perform such an evaluation, a court must:

> [C]onsider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, [i]t has been held proper to take the bird in hand instead of a prospective flock in the bush.

*Rodriguez*, 2018 WL 1920256, at *3; *Moreno v. S.F. Bay Area Rapid Transit Dist.*, 2019 WL 343472, at *4 (N.D. Cal. Jan. 28, 2019) ("considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to a present value."). The Baker Settlement is a favorable result for the Class, especially in light of the costs, risks, and delay of further litigation, and the other relevant factors.

1

### 1.    The Amount Offered in Settlement

2      "[T]he critical component of any settlement is the amount of relief obtained by the

3   class." *Destefano v. Zynga, Inc.*, 2016 WL 537946, at *11 (N.D. Cal. Feb. 11, 2016).

4   However, it "is well-settled law that a proposed settlement may be acceptable even though

5   it amounts to only a fraction of the potential recovery that might be available to the class

6   members at trial." *Rodriguez*, 2018 WL 1920256, at *4.[9]  By definition, a settlement

7   "embodies a compromise; in exchange for the saving of cost and elimination of risk, the

8   parties each give up something they might have won had they proceeded with litigation."

9   *Officers of Justice*, 688 F.2d at 624; *see also Schaffer v. Litton Loan Servicing, LP*, 2012

10   WL 10274679, *11 (C.D. Cal. Nov. 13, 2012) ("Estimates of what constitutes a fair

11   settlement figure are tempered by factors such as the risk of losing at trial, the expense of

12   litigating the case, and the expected delay in recovery (often measured in years).").

13      The recovery obtained from Mr. Baker—$2 million—is a favorable result by any

14   measure. The recovery provides an immediate and tangible cash benefit to the Class, and

15   eliminates the substantial risk that the Class could recover less from this defendant, or

16   nothing, if the Action went to trial. ¶¶ 84-103. As noted above, the Settlement Amount

17   represents *more than 50%* of the insurance proceeds available to fund a settlement (i.e.,

18   $3.96 million of a single $5 million insurance policy), notwithstanding the existence of

19   at least one other matter currently draining resources from that policy.[10] Furthermore, Mr.

20   Baker was unable to contribute any amount from his personal resources. Accepting a

21   certain and substantial amount of insurance proceeds, rather than seeking a

22   hypothetical—and possibly non-existent—contribution from Mr. Baker at some future

23   date, is in the best interests of the Class.[11]

24   _____

25   [9]    Here, the likelihood of recovering a greater amount following a trial judgment in
     Class Representative's favor was small. ¶¶ 98-103.

26   [10]   The history of Mr. Baker's efforts to obtain insurance coverage for this matter was
     previously addressed in the Supplement to Class Representative's Motion for Preliminary
     Approval of Settlement with Darryl S. Baker filed June 3, 2020. Doc. 346.

27   [11]   *See, e.g.*, *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 457
     (S.D.N.Y. 2004) (approving settlement based on insurance proceeds and noting that "[t]he

28   objection that the individual defendants should have contributed more to the settlement is

The Settlement Amount also represents a meaningful percentage of the Class's potential estimated aggregate damages—ranging from approximately $34.7 million to approximately $189.5 million based on Class Representative's ability to establish damages based on certain of the alleged partial corrective disclosures.[12] Accordingly, the Baker Settlement—*on its own and without considering the additional recoveries from the other defendants*—represents between approximately 6% and 1% of the Class's estimated aggregate damages. ¶ 10. By way of comparison, NERA Economic Consulting reported the median ratio of settlements to investor losses to be 2.1% in 2019. *See supra* n.4.

Considered against the extensive risks, costs, and delay involved with proceeding to trial, as well as the additional challenges presented during the course of this Action (e.g., Insys' bankruptcy filing), the $2 million recovery from Mr. Baker—representing the largest portion of the *guaranteed* collective recovery for the Class[13]—is fair, reasonable, and adequate and in the best interests of the Class.

## 2.    The Risks of Continued Litigation

"To determine whether the proposed settlement is fair, reasonable, and adequate, the Court must balance the continuing risks of litigation (including the strengths and weaknesses of the Plaintiffs' case), with the benefits afforded to members of the Class, and the immediacy and certainty of a substantial recovery." *Velazquez v. Int'l Marine & Indus. Applicators, LLC*, 2018 WL 828199, at *4 (S.D. Cal. Feb. 9, 2018). While Class Representative and Class Counsel believe they had substantial evidence to support their claims, and were prepared to try this case against Mr. Baker, they acknowledge that doing so posed major challenges and risks. *See In re OmniVision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) ("merely reaching trial is no guarantee of recovery").

---

largely symbolic . . . most of these [individual] defendants, whatever their culpability, lack the financial ability to contribute to the fund in amounts that would materially improve the settlement.").

[12]    At trial, Mr. Baker would be expected to argue that damages were zero.

[13]    As noted above, the three settlements obtained in the Action provide for a certain recovery of $2.95 million, with the potential to increase to up to $12.25 million, depending upon certain contingencies.

*First*, Class Representative faced challenges to establishing Mr. Baker's liability. Throughout the Action, Mr. Baker maintained that the only allegedly false or misleading statement attributable to him was: (i) forward looking; (ii) puffery; and, in any event, (iii) literally true. ¶ 88. Mr. Baker also maintained that he had no knowledge of the alleged fraud (i.e., the Criminal Enterprise) and that he believed that increased Subsys sales growth in 2014 was at least partially due to Insys' efforts to market to oncologists. ¶ 89. In addition, Mr. Baker would have likely argued that the alleged Criminal Enterprise was carried out by defendants Kapoor and Babich, largely through sales and marketing employees for whom Mr. Baker (as CFO) had no supervisory responsibility. ¶ 90. Notably, Mr. Baker was the *only* defendant in this matter who was not criminally prosecuted in connection with Insys' off-label promotion of Subsys. *Id*. Mr. Baker would likely use this fact, along with the lack of insider sales, personal financial motive, and absence of financial restatements, to challenge scienter. ¶ 91.

*Second*, Class Representative faced significant trial risks related to the Rule 10b-5 elements of loss causation and damages, where Class Representative's claims rest heavily on expert testimony about complex economic and statistical concepts. At trial, Mr. Baker would have presented evidence (through his expert) contending, among other things, that: (i) none of the Corrective Disclosures actually "corrected" the Form 10-K Statement because neither mentioned Insys' oncology efforts one way or the other, identified the source or amount of any Subsys sales, nor gave any indication that Insys was not making efforts to have oncologists prescribe the drug; and (ii) none of the Corrective Disclosures revealed "new" information that could explain the price declines on each of those days. ¶¶ 92-95. Mr. Baker also would have argued that Insys' stock price did not suffer a statistically significant decline on January 25, 2016. ¶ 96.[14] Thus, "establishing damages

---

[14]   If Class Representative were to lose one or more Corrective Disclosures at trial, the Class's recoverable damages would have been greatly reduced. For example, if the Class lost the January 25, 2016 Corrective Disclosure, but was able to prove loss causation as to the first two Corrective Disclosures, estimated aggregate damages would drop from approximately $189.5 million to approximately $123.3 million. If the Class lost the December 3, 2015 Corrective Disclosure, estimated damages tied solely to the

at trial would lead to a battle of experts . . . with no guarantee whom the jury would believe." *In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001); *see also In re Celera Corp. Sec. Litig.*, 2015 WL 7351449, at *6 (N.D. Cal. Nov. 20, 2015) (risks related to the "battle of the experts" weighed in favor of settlement approval).

*Finally*, it was uncertain whether Class Representative would be able to collect anything from Mr. Baker following a trial judgment in the Class's favor. Indeed, even if the jury rendered a verdict in Class Representative's favor, the same jury could assign Mr. Baker only a very small portion of the aggregate responsibility for the alleged fraud pursuant to the PSLRA's proportionate fault provisions. And, given Mr. Baker's limited personal financial resources and insurance coverage, there was a risk that he might not even be able to pay his portion of an even reduced judgment. ¶¶ 98-103.

If realized, any one of the foregoing risks could have precluded any recovery from Mr. Baker.[15] By resolving the Action through the Settlement, in contrast, Class Representative guarantees a $2 million cash recovery for the benefit of the Class. This factor supports the Settlement.

### 3.    The Complexity, Expense, and Duration of Continued Litigation

The "expense, complexity and likely duration of further litigation" or "delay of trial and appeal" also should be taken into account when assessing a proposed settlement. *See Churchill*, 361 F.3d at 575; Rule 23(e)(2)(C)(i). Courts have consistently found securities fraud actions "notoriously complex[]" and the settlement of such actions appropriate to "circumvent[] the difficulty and uncertainty inherent in long, costly trials." *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 2006 WL 903236, at *8 (S.D.N.Y. Apr. 6, 2006); *see also In re Heritage Bond Litig.*, 2005 WL 1594403, at *6 (C.D. Cal.

---

remaining November 4, 2015 disclosure would drop to approximately $34.7 million. ¶ 97.
[15]    The third Ninth Circuit factor (i.e., the risk of maintaining class action status throughout the trial) also supports Settlement, as a court may exercise its discretion to re-evaluate the appropriateness of class certification at any time. *See Omnivision*, 559 F. Supp. 2d at 1041 ("there is no guarantee the certification would survive through trial, as Defendants might have sought decertification or modification of the class").

June 10, 2005) (class actions have a well-deserved reputation as being the most complex). "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015).

Here, Class Representative and Mr. Baker reached the Settlement just three months before a trial of the Action was set to commence. Once the trial was over, the losing party would invariably file post-trial motions and appeals. Each of these steps is complex and expensive and could result in additional years of litigation. *In re Amgen, Inc. Sec. Litig.*, 2016 WL 10571773, at *3 (C.D. Cal. Oct. 25, 2016) ("A trial of a complex, fact-intensive case like this could have taken weeks, and the likely appeals of rulings on summary judgment and at trial could have added years to the litigation.").[16] Further, the expense of litigating this Action for more than four years was significant. Trial would have increased those expenses considerably, requiring a trial team from across the country to move to Phoenix, Arizona to work around the clock for weeks. *See Hartless v. Clorox Co.*, 273 F.R.D. 630, 640 (S.D. Cal. 2011), *aff'd in part*, 473 F. App'x 716 (9th Cir. 2012) ("Considering these risks, expenses and delays, an immediate and certain recovery for class members . . . favors settlement of this action.").

### 4.     The Extent of Discovery Completed and Stage of Proceedings

The Settlement was reached after more than four years of litigation, including extensive discovery efforts. As detailed in the Whitman Declaration, before reaching the Settlement, Class Representative reviewed and analyzed more than 14 million pages of documents, took or defended fifteen fact and expert depositions, served detailed expert reports pertaining to liability and damages issues, and litigated numerous motions. ¶¶ 16-

---

[16]     In similar actions that were tried, the time from verdict to final judgment has taken as long as seven years. *See, e.g.,* Verdict Form, *Jaffe Pension Plan v. Household Int'l., Inc.*, No. 02-cv-5893 (N.D. Ill. May 7, 2009), ECF No. 1611; Final Judgment and Order of Dismissal With Prejudice, *Jaffe Pension Plan v. Household Int'l., Inc.*, No. 02-cv-5893 (N.D. Ill. Nov. 10, 2016), ECF No. 2267; *see also* Verdict Form, *In re Vivendi Universal, S.A. Sec. Litig.*, No. 02-cv-5571 (S.D.N.Y. Feb. 2, 2010), ECF No. 998; Final Judgment Approving Class Action Settlement of All Remaining Claims, *In re Vivendi Universal, S.A. Sec. Litig.*, No. 02-cv-5571 (S.D.N.Y. May 9, 2017), ECF No. 1317.

77. Moreover, defendants' fully-briefed Summary Judgment Motion was pending when the Settlement was reached. Thus, the Settling Parties' respective positions were clear and known, as was the evidence they would use to prove their case, and they had sufficient information to properly assess the value of the Settlement. *See Kmiec v. Powerwave Techs., Inc.*, 2016 WL 5938709, at *4 (C.D. Cal. July 11, 2016) ("[T]he fact that the parties did not settle until after the conclusion of fact discovery indicates that Plaintiffs were well aware of the merits of their case and the difficulties awaiting them at trial."); *Amgen*, 2016 WL 10571773, at *4 (finding "in favor of granting final approval" where discovery was complete and "case was on the verge of trial"). This factor strongly weighs in favor of the Settlement.

### 5.    Presence of a Governmental Participant

Although there were regulatory investigations and criminal charges in connection with Insys' off-label marketing of Subsys, there was no parallel action by the SEC. Also, pursuant to the Class Action Fairness Act ("CAFA"), Mr. Baker provided notice of the Settlement to appropriate state and federal officials. Doc. 404. To date, none of these officials have raised any objection or concern regarding the Settlement. *LinkedIn*, 309 F.R.D. at 589 (finding no objections favored settlement).

### 6.    The Reaction of Class Members

In assessing a settlement, courts in the Ninth Circuit also typically consider the reaction of the class to the settlement. *In re Google LLC St. View Elec. Commc'ns Litig.*, 2020 WL 1288377, at *15 (N.D. Cal. Mar. 18, 2020); *Morgan v. Childtime Childcare, Inc.*, 2020 WL 218515, at *2 (C.D. Cal. Jan. 6, 2020) ("Lack of objection speaks volumes for a positive class reaction to the settlement."). The deadline for Class Members to object to the Baker Settlement is September 2, 2020. ¶ 108. To date, there have been no objections. *Id*.[17] Class Representative will address objections, if any, in his reply.

---

[17]    In connection with Class Notice, Class Members were previously provided the opportunity to exclude themselves from the Class. Not one Class Member requested exclusion from the Class. Schachter Decl. (attached as Ex. 2 to the Whitman Decl.), ¶ 15.

1

### D. The Remaining Rule 23(e)(2) Factors Support Final Approval

2

Amended Rule 23(e)(2) also instructs courts to consider: (i) the effectiveness of

3

the proposed method of distributing the relief provided to the class, including the method

4

of processing class member claims; (ii) the terms of any proposed award of attorney's

5

fees, including the timing of payment; (iii) any other agreement made in connection with

6

the proposed settlement; and (iv) whether class members are treated equitably relative to

7

each other. *See* Rule 23(e)(2)(C)(ii)-(iv), (e)(2)(D). These factors also support final

8

approval of the Settlement.

9

*First*, the proposed method of distribution and claims processing ensures equitable

10

treatment of Class Members, whose claims will be processed pursuant to a standard

11

method routinely found effective in securities class actions. The Court-authorized Claims

12

Administrator will review and process all Claims received, provide Claimants with an

13

opportunity to cure any deficiency or request judicial review of the denial of their Claims,

14

if applicable, and ultimately mail or wire Authorized Claimants their *pro rata* share of

15

the Net Settlement Fund, as calculated under the Plan. *See* Section III *infra*; ¶¶ 109-113.

16

Importantly, none of the Settlement proceeds will revert to Mr. Baker. *See* Doc. 341-1,

17

¶ 13.

18

*Second*, in an effort to preserve a material percentage of the proceeds of the Baker

19

Settlement for the Class, Class Counsel is not seeking any award of attorneys' fees.

20

Rather, Class Counsel, will only seek reimbursement of a portion of the over $1.1 million

21

in expenses Plaintiffs' Counsel have incurred prosecuting this matter since early 2016.

22

As detailed in the Expense Reimbursement Memorandum, the expenses sought for

23

reimbursement were reasonably incurred in prosecuting and resolving the Action. *See*

24

*Omnivision*, 559 F. Supp. 2d at 1048 ("Attorneys may recover their reasonable expenses

25

that would typically be billed to paying clients in non-contingency matters.").[18] Further,

26

---

27

[18]     The Settlement Notice also explained that Class Counsel's request for expenses could include a request for reimbursement of Class Representative's reasonable costs directly related to his representation of the Class, as permitted by the PSLRA, in an amount not to exceed $15,000. *See* 15 U.S.C. § 78u-4(a)(4).

28

1    any expense award is separate from the approval of the Settlement, and neither Class

2    Counsel nor Class Representative may terminate the Settlement based on this Court's or

3    any appellate court's ruling with respect to expenses. *See* Doc. 341-1, ¶ 16.

4         *Third*, as previously disclosed, the only agreement the Settling Parties entered into

5    in addition to the Stipulation was the preceding term sheet.

6                                           * * *

7         For the reasons set forth above and in the Whitman Declaration, the Baker

8    Settlement is fair, reasonable, and adequate when evaluated under any standard, or set of

9    factors and, therefore, warrants the Court's final approval.

10   **III.    THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION**

11        A plan for allocating settlement proceeds under Rule 23 is evaluated under the

12   same standards of review applicable to the settlement as a whole—the plan must be fair

13   and reasonable. *See Class Plaintiffs*, 955 F.2d at 1284; *Amgen*, 2016 WL 10571773, at

14   *7. An allocation formula need only have a "reasonable, rational basis, particularly if

15   recommended by experienced and competent counsel." *Nguyen v. Radient Pharms.*

16   *Corp.*, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014). "A plan of allocation that

17   reimburses class members based on the extent of their injuries is generally reasonable."

18   *In re Oracle Sec. Litig.*, 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994).

19        The Plan proposed here provides an equitable basis to allocate the Net Settlement

20   Fund among all Authorized Claimants, and was developed by Class Counsel with the

21   assistance of its damages expert. ¶ 111. The Plan is "grounded in a formula that will

22   compensate class members for the losses related to their" purchases/acquisitions of Insys

23   common stock. *Amgen*, 2016 WL 10571773, at *8.

24        The straightforward formula (set forth in Appendix A to the Settlement Notice) is

25   based upon the estimated amount of artificial inflation in the price of Insys common stock

26   during the Class Period. ¶ 111. To have a loss under the Plan, a Claimant must have

27   purchased or otherwise acquired Insys common stock during the Class Period and held

28   those shares through at least one of the alleged Corrective Disclosures. ¶ 112. Further, a

1    Claimant's loss under the Plan will depend upon several factors, including the date(s)

2    when the Claimant purchased/acquired their shares of Insys common stock during the

3    Class Period, whether such shares were sold and if so, when and at what price, taking into

4    account the PSLRA's statutory limitation on recoverable damages. *Id*. Authorized

5    Claimants will recover their proportional "pro rata" amount of the Net Settlement Fund

6    based on their loss. *See In re Audioeye, Inc., Sec. Litig.*, 2017 WL 5514690, at *2 (D.

7    Ariz. May 8, 2017) (finding plan of allocation providing for distribution to claimants on

8    a pro rata basis to be fair and reasonable).[19]

9          The structure of the Plan is similar to those that have been used to equitably

10   apportion settlement proceeds in many other securities class actions. *See, e.g., Hefler v.*

11   *Wells Fargo & Co.*, 2018 WL 4207245, at *11 (N.D. Cal. Sept. 4, 2018); *Nguyen*, 2014

12   WL 1802293, at *5; *Ansell v. Laikin*, 2012 WL 13034812, at *9 (C.D. Cal. July 11, 2012);

13   *In re Wireless Facilities, Inc. Sec. Litig. II*, 2008 WL 11338455, at *6 (S.D. Cal. Dec. 19,

14   2008). No objections to the Plan have been filed, warranting approval. ¶ 116.

15   **IV.   NOTICE OF THE BAKER SETTLEMENT SATISFIED RULE 23 AND**
     **       DUE PROCESS**
16

17         Class Representative has provided the Class with adequate notice of the Baker

18   Settlement. Here, notice satisfied both: (i) Rule 23 as it was "the best notice . . . practicable

19   under the circumstances" and directed "in a reasonable manner to all class members who

20   would be bound by the" Settlement, *see* Rule 23(c)(2)(B), (e)(1)(B); *Eisen v. Carlisle &*

21   *Jacquelin*, 417 U.S. 156, 173-75 (1974); and (ii) due process as it was "reasonably

22   calculated, under all the circumstances, to apprise interested parties of the pendency of

23   the action and afford them an opportunity to present their objections." *Mullane v. Cent.*

24   *Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

25         In accordance with the Preliminary Approval Order, A.B. Data mailed Postcard

26   Settlement Notices to the potential Class Members, and Nominees (in bulk), who

27

28   [19]    The Net Settlement Fund will be distributed to Authorized Claimants following
     approval of the Settlement and upon the Court's entry of the Class Distribution Order.

previously received the Class Notice, as well as other potential Class Members identified through further reasonable effort. A.B. Data also mailed copies of the Settlement Notice and Claim Form to the Nominees contained in its Nominee database. *See* Schachter Decl., ¶¶ 3-11. In addition, the Summary Settlement Notice was published in *Investor's Business Daily* and transmitted over *PRNewswire. Id.*, ¶ 12. A.B. Data also updated the Website www.InsysRXSecuritiesLitigation.com, as well as the toll-free helpline for this matter, with information about the Settlement. *Id.*, ¶¶ 13-14. Pursuant to the Stipulation, Mr. Baker issued notice pursuant to CAFA on May 29, 2020. Doc. 404-1.

The content disseminated through this notice campaign was also more than adequate, as it "generally describe[d] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Young v. LG Chem Ltd.*, 783 F. App'x 727, 736 (9th Cir. 2019). Collectively, the notices provide the necessary information for Class Members to make an informed decision regarding the Settlement, as required by the PSLRA (*see* 15 U.S.C. § 78u-4(a)(7)), and fairly apprises them of their rights with respect to the Settlement. *See, e.g., In re Apollo Grp. Inc. Sec. Litig.*, 2012 WL 1378677, at *3 (D. Ariz. Apr. 20, 2012).

## V.   CONCLUSION

For the reasons stated herein and in the Whitman Declaration, Class Representative respectfully requests that the Court grant final approval of the Baker Settlement and the proposed Plan of Allocation.

DATED: August 19, 2020              Respectfully submitted,

**KESSLER TOPAZ
MELTZER & CHECK, LLP**

*s/ Johnston de F. Whitman, Jr.*
Johnston de F. Whitman, Jr. (admitted *Pro Hac Vice*)
jwhitman@ktmc.com
Andrew L. Zivitz (admitted *Pro Hac Vice*)
azivitz@ktmc.com
Jonathan F. Neumann (admitted *Pro Hac Vice*)
jneumann@ktmc.com
280 King of Prussia Road
Radnor, PA 19087

Telephone: (610) 667-7706
Facsimile: (610) 667-7056

-and-

Jennifer L. Joost (admitted *Pro Hac Vice*)
jjoost@ktmc.com
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone: (415) 400-3000
Facsimile: (415) 400-3001

*Lead Counsel for Lead Plaintiff, Class
Representative, and the Class*

**BONNETT, FAIRBOURN,
FRIEDMAN & BALINT, P.C.**
Francis J. Balint, Jr.
fbalint@bffb.com
Andrew S. Friedman
afriedman@bffb.com
2325 E. Camelback Road, Suite 300
Phoenix, AZ 85016
Telephone: (602) 274-1100
Facsimile: (602) 274-1199

*Liaison Counsel for Lead Plaintiff, Class
Representative, and the Class*

18

1

## <u>CERTIFICATE OF SERVICE</u>

2       I hereby certify that on August 19, 2020, I electronically transmitted the foregoing

3   document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

4   Notice of Electronic Filing to those persons who are CM/ECF registrants:

5
Don Bivens
dbivens@swlaw.com
6   Anthony T. King
aking@swlaw.com
7   **SNELL & WILMER LLP**
One Arizona Center
8   400 E. Van Buren
Phoenix, AZ 85004
9   Telephone: 602-382-6513
Facsimile: 602-382-6070
10
David B. Rosenbaum
11  drosenbaum@omlaw.com
**OSBORN MALEDON PA**
12  2929 N. Central Ave.,
21st Floor
13  Phoenix, AZ 85012
Telephone: 602-640-9000
14  Facsimile: 602-640-9050
15  George J. Coleman
gjc@slwplc.com
16  Michael K. Foy
mkf@slwplc.com
17  **SALMON, LEWIS & WELDON, P.L.C.**
18  2850 E. Camelback Road,
Suite 200
19  Phoenix, AZ 85016
Telephone: 602-801-9060
20  Facsimile:: 602-801-9070
21  William Klain
wklain@lang-klain.com
22  Zachary Rosenberg
zrosenberg@lang-klain.com
23  **LANG & KLAIN, PC**
6730 N. Scottsdale Road
24  Suite 101
Scottsdale, AZ 85253
25  Telephone: 480-534-4900
Facsimile: 480-970-5034
26

Bahram Seyedin-Noor
bahram@altolit.com
Bryan Ketroser
bryan@altolit.com
Jared Kopel
jared@altolit.com
Ian Browning
ian@altolit.com
**ALTO LITIGATION**
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone: 415-779-2586
Facsimile: 866-654-7207

Brian T. Kelly
bkelly@nixonpeabody.com
Matthew L. McLaughlin
mmclaughlin@nixonpeabody.com
George J. Skelly
gskelly@nixonpeabody.com
**NIXON PEABODY LLP**
Exchange Place
53 State St.
Boston, MA 02109
Telephone: 617-345-1000
Facsimile: 617-345-1300

Russell Piccoli
rp@winazlaw.com
**RUSSELL PICCOLI PLC**
701 N. 44th St.
Phoenix, AZ 85008
Telephone: 480-429-3000
Facsimile: 480-429-3100

    *s/ Johnston de F. Whitman, Jr.*

27

28