**KESSLER TOPAZ MELTZER & CHECK, LLP**
Andrew L. Zivitz
azivitz@ktmc.com
Johnston de F. Whitman, Jr.
jwhitman@ktmc.com
Jonathan F. Neumann
jneumann@ktmc.com
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

-and-

Jennifer L. Joost
jjoost@ktmc.com
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone: (415) 400-3000
Facsimile: (415) 400-3001

*Lead Counsel for Lead Plaintiff, Class Representative, and the Class*

**BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C.**
Francis J. Balint, Jr.
fbalint@bffb.com
Andrew S. Friedman
afriedman@bffb.com
2325 E. Camelback Road, Suite 300
Phoenix, AZ 85016
Telephone: (602) 274-1100
Facsimile: (602) 274-1199

*Liaison Counsel for Lead Plaintiff, Class Representative, and the Class*

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Richard Di Donato, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>Insys Therapeutics, Inc.; Michael L. Babich; Darryl S. Baker; and John N. Kapoor,<br><br>Defendants. | No. 16-cv-00302-NVW<br><br>**CLASS ACTION**<br><br>**CLASS REPRESENTATIVE'S MOTION FOR FINAL APPROVAL OF SETTLEMENT WITH DEFENDANT JOHN N. KAPOOR AND PLAN OF ALLOCATION; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ..........................................................................1

II.   THE KAPOOR SETTLEMENT WARRANTS FINAL APPROVAL ..............3

      A.    Class Representative and Class Counsel Have Adequately
            Represented the Class in this Action.......................................................5

      B.    The Kapoor Settlement Was Negotiated at Arm's-Length......................6

      C.    The Kapoor Settlement Provides the Class Adequate Relief,
            Considering the Costs, Risks, and Delay of Litigation and Other
            Relevant Factors ....................................................................................7

            1.    The Amount Offered in Settlement...............................................8

            2.    The Risks of Continued Litigation................................................9

            3.    The Complexity, Expense, and Duration of Continued
                  Litigation ...................................................................................11

            4.    The Extent of Discovery Completed and Stage of
                  Proceedings ................................................................................12

            5.    Presence of a Governmental Participant .....................................13

            6.    The Reaction of Class Members .................................................13

      D.    The Remaining Rule 23(e)(2) Factors Support Final Approval ...........13

III.  THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION...........15

IV.   NOTICE OF THE KAPOOR SETTLEMENT SATISFIED RULE 23
      AND DUE PROCESS................................................................................16

V.    CONCLUSION ........................................................................................17

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

5

*In re Amgen, Inc. Sec. Litig.*,
   2016 WL 10571773 (C.D. Cal. Oct. 25, 2016).........................................12, 12-13, 15

6

*Ansell v. Laikin*,
   2012 WL 13034812 (C.D. Cal. July 11, 2012)........................................................ 16

7

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
   2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ............................................................. 11

8

9

*In re Apollo Grp. Inc. Sec. Litig.*,
   2012 WL 1378677 (D. Ariz. Apr. 20, 2012) ........................................................... 17

10

11

*In re Audioeye, Inc., Sec. Litig.*,
   2017 WL 5514690 (D. Ariz. May 8, 2017) ............................................................. 16

12

13

*In re AXA Rosenberg Inv'r Litig.*,
   2012 WL 12920617 (N.D. Cal. Apr. 2, 2012) ......................................................... 15

14

15

*Campbell v. Facebook, Inc.*,
   951 F.3d 1106 (9th Cir. 2020) ................................................................................ 4, 5

16

17

*In re Celera Corp. Sec. Litig.*,
   2015 WL 7351449 (N.D. Cal. Nov. 20, 2015) ........................................................ 11

18

*In re Chrysler-Dodge-Jeep Ecodiesel® Mktg., Sales Practices, &*
   *Prods. Liab. Litig.*,
   2019 WL 2554232 (N.D. Cal. May 3, 2019) .............................................................5

19

20

*Churchill Vill., L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ....................................................................4-5, 6, 7, 11

21

22

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ............................................................................. 5, 15

23

24

*de Rommerswael v. Auerbach*,
   2018 WL 6003560 (C.D. Cal. Nov. 5, 2018)..............................................................6

25

26

*Destefano v. Zynga, Inc.*,
   2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ..............................................................8

27

28

*Dura Pharm., Inc. v. Broudo*,
    544 U.S. 336 (2005) ............................................................................. 10

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) ...........................................................................16-17

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) .................................................................. 6

*In re Google LLC St. View Elec. Commc'ns Litig.*,
    2020 WL 1288377 (N.D. Cal. Mar. 18, 2020) ........................................ 13

*Hartless v. Clorox Co.*,
    273 F.R.D. 630 (S.D. Cal. 2011) ............................................................ 12

*Hefler v. Wells Fargo & Co.*,
    2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) ......................................... 16

*In re Heritage Bond Litig.*,
    2005 WL 1594403 (C.D. Cal. June 10, 2005) .................................... 11, 14

*In re Hyundai & Kia Fuel Econ. Litig.*,
    926 F.3d 539 (9th Cir. 2019) ................................................................... 4

*Int'l Bhd. of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*,
    2012 WL 5199742 (D. Nev. Oct. 19, 2012) .............................................. 7

*Juvera v. Salcido*,
    2013 WL 6628039 (D. Ariz. Dec. 17, 2013) ..........................................3-4

*Kmiec v. Powerwave Techs., Inc.*,
    2016 WL 5938709 (C.D. Cal. July 11, 2016) .......................................12-13

*Knapper v. Cox Commc'ns, Inc.*,
    329 F.R.D. 238 (D. Ariz. 2019) ............................................................... 5

*Lane v. Facebook, Inc.*,
    696 F.3d 811 (9th Cir. 2012) ................................................................... 5

*In re LinkedIn User Privacy Litig.*,
    309 F.R.D. 573 (N.D. Cal. 2015) ......................................................11-12, 13

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ...........................................................9, 14-15

*Moreno v. S.F. Bay Area Rapid Transit Dist.*,
    2019 WL 343472 (N.D. Cal. Jan. 28, 2019) ..........................................7-8

iii

*Morgan v. Childtime Childcare, Inc.*,
  2020 WL 218515 (C.D. Cal. Jan. 6, 2020) ................................................................. 13

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
  339 U.S. 306 (1950).........................................................................................16-17

*NECA-IBEW Health & Welfare Fund v. Goldman, Sachs & Co.*,
  2016 WL 3369534 (S.D.N.Y. May 2, 2016) ............................................................. 15

*Nguyen v. Radient Pharm. Corp.*,
  2014 WL 1802293 (C.D. Cal. May 6, 2014) ......................................................... 15, 16

*Officers for Justice v. Civil Serv. Comm'n of the City & Cty. of S.F.*,
  688 F.2d 615 (9th Cir. 1982) ............................................................................. 7, 8

*In re OmniVision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................................................. 9, 11

*In re Oracle Sec. Litig.*,
  1994 WL 502054 (N.D. Cal. June 18, 1994) .......................................................... 15

*Paul, Johnson, Alston & Hunt v. Graulty*,
  886 F.2d 268 (9th Cir. 1989) .............................................................................. 14

*In re Polaroid ERISA Litig.*,
  240 F.R.D. 65 (S.D.N.Y. 2006) ............................................................................. 6

*Rodriguez v. Bumble Bee Foods, LLC*,
  2018 WL 1920256 (S.D. Cal. Apr. 24, 2018)......................................................7-8, 8

*Schaffer v. Litton Loan Servicing, LP*,
  2012 WL 10274679 (C.D. Cal. Nov. 13, 2012) ......................................................... 8

*Singh v. Roadrunner Intermodal Servs., LLC*,
  2019 WL 316814 (E.D. Cal. Jan. 24, 2019) ............................................................. 8

*Taylor v. Shippers Transp. Express, Inc.*,
  2015 WL 12658458 (C.D. Cal. May 14, 2015) ......................................................... 6

*Turocy v. El Pollo Loco Holdings, Inc.*,
  No. 8:15-cv-01343 (C.D. Cal. Aug. 27, 2019), ECF No. 219 ............................... 14-15

*Velazquez v. Int'l Marine & Indus. Applicators, LLC*,
  2018 WL 828199 (S.D. Cal. Feb. 9, 2018)............................................................... 9

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, &
  Prods. Liab. Litig.*,
  895 F.3d 597 (9th Cir. 2018) ...........................................................................3-4

*Young v. LG Chem Ltd.*,
    783 F. App'x 727 (9th Cir. 2019) ............................................................................... 17

**Statutes**

15 U.S.C. § 78u-4(a)(7) ................................................................................................ 17

**Other Authorities**

Fed. R. Civ. P. 23 ...................................................................................................*passim*

Janeen McIntosh & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2019 Full-Year Review*, NERA Economic Consulting (Feb. 12, 2020), https://www.nera.com/content/dam/nera/publications/2020/PUB_YEAR_END_Trends_012 120_Final.pdf ....................................................... 9

Court-appointed Class Representative Clark Miller, on behalf of himself and the Court-certified Class, respectfully moves this Court, pursuant to Federal Rule of Civil Procedure ("Rule") 23, for: (i) final approval of the proposed settlement of this securities class action with John N. Kapoor on the terms set forth in the Stipulation and Agreement of Settlement Between Lead Plaintiff and Defendant John N. Kapoor dated July 1, 2020 (Doc. 371-1) ("Stipulation"); and (ii) approval of the proposed plan for allocating the net proceeds of the Settlement to the Class ("Plan of Allocation" or "Plan").[1]

## I.    PRELIMINARY STATEMENT

Subject to this Court's final approval, Class Representative and Class Counsel have negotiated a settlement providing for a payment from defendant John N. Kapoor's ("Dr. Kapoor") personal assets of at least $700,000 in cash, with the potential to increase to $10,000,000 in cash for the Class, in exchange for the dismissal of all claims brought in the Action against Dr. Kapoor ("Settlement" or "Kapoor Settlement"). The Kapoor Settlement is the second of three settlements reached in the Action, and represents the largest potential recovery for the Class.[2]

As detailed herein, the Settlement is the product of more than four years of extensive litigation. Structuring a settlement with Dr. Kapoor was particularly challenging here given the many obstacles to obtaining ***any*** recovery from this defendant. Aside from the defenses Dr. Kapoor would assert—and Class Representative would be required to overcome—at trial, there were additional hurdles to obtaining a recovery from Dr. Kapoor ***even if*** a judgment was obtained against him. *First*, in connection with Dr.

---

[1]    All capitalized terms not defined herein have the meanings ascribed to them in the Stipulation or in the Declaration of Johnston de F. Whitman, Jr. in Support of (I) Class Representative's Motion for Final Approval of Settlement with Defendant John N. Kapoor and Plan of Allocation; and (II) Class Counsel's Motion for an Award of Attorneys' Fees ("Whitman Declaration"). The Whitman Declaration is an integral part of this submission. Citations to "¶ _" herein refer to paragraphs in the Whitman Declaration. Unless otherwise noted, all internal citations and quotations are omitted.

[2]    The Kapoor Settlement combined with the settlements reached with defendants Darryl S. Baker and Michael L. Babich ("Baker and Babich Settlements") provides for a Class recovery of at least $2.95 million, with the potential to increase to $12.25 million, resolving the Action in its entirety.

Kapoor's Criminal Conviction in *United States of America v. Babich, et al*., No. 1:16-cr-10343-ADB (D. Mass.), a case concerning the alleged nationwide criminal racketeering conspiracy for the off-label promotion of Subsys, Dr. Kapoor is obligated to pay nearly $62 million in restitution, forfeiture, and fines (i.e., the "Criminal Obligation")—an amount that far exceeds his liquid assets and represents the vast majority of his net worth.[3] If the case had proceeded to trial and the Class obtained a favorable judgment, the DOJ would likely have sought to seize Dr. Kapoor's assets in their entirety to satisfy the Criminal Obligation—leaving nothing to satisfy a judgment against Dr. Kapoor in this Action. *Second*, in light of Dr. Kapoor's criminal indictment and subsequent conviction as well as other coverage defenses, Dr. Kapoor has repeatedly been denied potentially applicable insurance coverage.[4] Accordingly, there was no insurance available to fund a settlement or satisfy a judgment against Dr. Kapoor, and any recovery obtained from Dr. Kapoor would have to come ***entirely*** from his diminishing and limited personal resources.

In light of the above, Class Representative vigorously pursued a result for the Class that maximized the consideration that Dr. Kapoor was able to pay now, with the potential for upside in the future. To that end, the Settlement provides: (i) initial payments on a schedule that will not cause the DOJ to seize Dr. Kapoor's assets; (ii) a guaranteed payment resulting from Dr. Kapoor's success ($2,000,000) or failure ($200,000) on the currently pending appeal of his Criminal Conviction, regardless of whether the DOJ decides to retry him; and (iii) additional potential consideration of up to $7,500,000 in the event Dr. Kapoor succeeds in having his Criminal Obligation reduced, eliminated, or paid by another party.[5] Indeed, Class Representative respectfully submits that the Settlement provides a highly favorable and innovative result for the Class.

---

[3]     In connection with the Settling Parties' settlement discussions, Dr. Kapoor's counsel shared details of Dr. Kapoor's financial condition with Class Counsel.

[4]     The history of Dr. Kapoor's efforts to obtain insurance coverage for this matter was previously addressed in Class Representative's memorandum in support of preliminary approval of the Kapoor Settlement. Doc. 371 at 10-12.

[5]     The specific terms and timing of payments are set forth in ¶ 7 of the Stipulation.

This Action was actively litigated for over four years, through a comprehensive investigation, the completion of fact and expert discovery, hard-fought motion practice, extensive trial preparation, and mediation efforts. ¶¶ 9, 21-79. From these efforts and others discussed herein and in the Whitman Declaration, Class Representative and Class Counsel knew the strengths and weaknesses of the Class's claims and carefully considered the risks of taking the Action to trial against Dr. Kapoor. Throughout the Action, Dr. Kapoor maintained significant defenses to both liability and damages, and any of these defenses could have resonated with a jury and precluded a recovery for the Class. ¶¶ 83-95; *see also infra* Section II.C.2.

In its July 2, 2020 Preliminary Approval Order, the Court found the Settlement likely to be finally approved as fair, reasonable, and adequate to the Class. Doc. 373, ¶ 1. The Settlement has the full support of Class Representative, and the reaction of the Class to date has been positive. While the September 24, 2020 deadline to object has not yet passed, following the dissemination of more than 29,900 Postcard Settlement Notices and 4,200 Settlement Notices to Class Members and Nominees as well as publication of a summary notice, not a single objection has been received. ¶¶ 105, 107.

Given the foregoing considerations and the factors addressed below, Class Representative and Class Counsel respectfully submit that: (i) the Kapoor Settlement meets the standards for final approval under Rule 23, and is a fair, reasonable, and adequate result for the Class; and (ii) the Plan of Allocation is a fair and reasonable method for equitably distributing the Net Settlement Fund.

## II.     THE KAPOOR SETTLEMENT WARRANTS FINAL APPROVAL

Rule 23(e)(2) requires judicial approval of any class action settlement. Whether to grant such approval lies within the district court's sound discretion. *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 895 F.3d 597, 611 (9th Cir. 2018) ("[d]eciding whether a settlement is fair is ultimately 'an amalgam of delicate balancing, gross approximations and rough justice,' . . . best left to the district judge, who has … a firsthand grasp of the claims, the class, the evidence, and the course of the

proceedings"). Such discretion should be guided by this Circuit's "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019); *Juvera v. Salcido*, 2013 WL 6628039, at *9 (D. Ariz. Dec. 17, 2013) ("The Ninth Circuit has declared that a strong judicial policy favors settlement of class actions.").

"Under . . . [Rule] 23(e)(2), a district court may approve a class action settlement only after finding that the settlement is fair, reasonable, and adequate." *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1120-21 (9th Cir. 2020). In making that determination, Rule 23(e)(2) provides that a court should consider whether:

> (A)   the class representatives and class counsel have adequately represented the class;
>
> (B)   the proposal was negotiated at arm's length;
>
> (C)   the relief provided for the class is adequate, taking into account:
>
>> (i)   the costs, risks, and delay of trial and appeal;
>>
>> (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii)   the terms of any proposed award of attorney's fees, including timing of payment;
>>
>> (iv)   any agreement required to be identified under Rule 23(e)(3); and
>
> (D)   the proposal treats class members equitably relative to each other.

Consistent with this guidance, the Ninth Circuit has identified similar factors for courts to consider in deciding whether to approve a class action settlement:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).[6] Moreover, in approving a settlement, a court "need not reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992); *see also Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012).

At the preliminary approval stage, this Court considered the Rule 23(e)(2) factors in assessing the Kapoor Settlement, and found it to be fair, reasonable, and adequate, subject to further consideration at the Settlement Fairness Hearing. Doc. 373, ¶ 1. Nothing has changed to alter the Court's previous analysis, and the factors supporting its determination to preliminarily approve the Settlement apply equally now. *See, e.g., In re Chrysler-Dodge-Jeep Ecodiesel® Mktg., Sales Practices, & Prods. Liab. Litig.*, 2019 WL 2554232, at *2 (N.D. Cal. May 3, 2019) (finding "conclusions [made in granting preliminary approval] stand and counsel equally in favor of final approval now"). Accordingly, the Settlement is fair, reasonable, adequate, and warrants final approval under the Rule 23(e)(2) factors and Ninth Circuit law.

## A.   Class Representative and Class Counsel Have Adequately Represented the Class in this Action

In determining whether to approve a class action settlement, the court first considers whether "class representative[] and class counsel have adequately represented the class." Rule 23(e)(2)(A). The adequacy requirement is satisfied if the representative party and counsel have fairly and adequately protected the interests of the class. *See Knapper v. Cox Commc'ns, Inc.*, 329 F.R.D. 238, 243 (D. Ariz. 2019).

As previously addressed in the Baker Settlement submission, Class Representative and Class Counsel have adequately represented the Class in both their prosecution and resolution of the Action. Class Representative has monitored and supervised the

---

[6]      "District courts may consider some or all of these factors." *Campbell*, 951 F.3d at 1121.

prosecution of the Action since its outset. *See* Declaration of Clark Miller ("Miller Decl."), attached as Ex. 1 to the Whitman Decl., ¶ 4. Further, Class Representative—whose claims are based on a common course of alleged wrongdoing by defendants and are typical of other Class Members—has no interests antagonistic to the Class. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (adequacy of representation depends on "an absence of antagonism" and "a sharing of interest" between representatives and absent class members).[7] Likewise, Class Counsel has actively litigated this Action through every major litigation stage except trial, resulting in a well-developed understanding of the strengths and weaknesses of the Action, the risks, costs, and delays of trial, and the obstacles to obtaining a greater recovery from Dr. Kapoor. Class Representative and Class Counsel firmly believe the Kapoor Settlement represents a favorable result for the Class and warrants approval. ¶ 5; Miller Decl., ¶ 6; *see also Churchill*, 361 F.3d at 576-77 (instructing courts to consider "*experience and views of counsel*") (emphasis in original).

### B.   The Kapoor Settlement Was Negotiated at Arm's-Length

In the Ninth Circuit, a "strong presumption of fairness" attaches to a class action settlement reached through arm's-length negotiations between "experienced and well-informed counsel." *de Rommerswael v. Auerbach*, 2018 WL 6003560, at *3 (C.D. Cal. Nov. 5, 2018); *Taylor v. Shippers Transp. Express, Inc.*, 2015 WL 12658458, at *10 (C.D. Cal. May 14, 2015) ("A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair."). Here, the Settlement was reached through sustained, intensive, good-faith bargaining by experienced counsel on both sides.

The Settling Parties began their discussions regarding a possible resolution of the Action while discovery was ongoing and Lead Plaintiff's Class Certification Motion was pending. Following a July 15, 2019 mediation before Michelle Yoshida ("Ms. Yoshida")

---

[7]   *See also In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members.").

1   of Phillips ADR—which did not result in a resolution of the Action—the parties

2   continued to aggressively litigate the case. ¶ 78. Thereafter, following the Court's denial

3   of defendants' Summary Judgment Motion in May 2020, and while preparing for trial,

4   Class Representative and Dr. Kapoor restarted their earlier settlement discussions. After

5   approximately two months of additional hard-fought, arm's-length negotiations overseen

6   by Ms. Yoshida, Class Representative and Dr. Kapoor agreed to resolve the Action. ¶ 79.[8]

7   The Settling Parties memorialized their agreement to settle in a term sheet executed on

8   June 24, 2020 and then spent an additional week negotiating the terms of the Stipulation

9   (while simultaneously preparing for trial). ¶¶ 79-81. This Settlement is, therefore, "not

10  the product of fraud or overreaching by, or collusion between, the negotiating parties."

11  *Officers for Justice v. Civil Serv. Comm'n of the City & Cty. of S.F.*, 688 F.2d 615, 625

12  (9th Cir. 1982).

### C. The Kapoor Settlement Provides the Class Adequate Relief, Considering the Costs, Risks, and Delay of Litigation and Other Relevant Factors

15      The remaining Rule 23(e)(2) factors overlap considerably with those articulated

16  by the Ninth Circuit, and all entail "a 'substantive' review of the terms of the proposed

17  settlement" that evaluate the fairness of the "relief that the settlement is expected to

18  provide to" the Class. *See* Rule 23(e)(2), advisory comm.'s note to 2018 amendments;

19  *Churchill*, 361 F.3d at 575-77. To perform such an evaluation, a court must:

> [C]onsider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, [i]t has been held proper to take the bird in hand instead of a prospective flock in the bush.

24  *Rodriguez v. Bumble Bee Foods, LLC*, 2018 WL 1920256, at *3 (S.D. Cal. Apr. 24, 2018);

25  *see also Moreno v. S.F. Bay Area Rapid Transit Dist.*, 2019 WL 343472, at *4 (N.D. Cal.

---

[8]     *See Int'l Bhd. of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*, 2012 WL 5199742, at *2 (D. Nev. Oct. 19, 2012) (finding settlement to be fair where it "was reached following arm's length negotiations between experienced counsel that involved the assistance of an experienced and reputable private mediator").

Jan. 28, 2019) ("considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to a present value."). The Kapoor Settlement is a favorable result for the Class, especially in light of the costs, risks, and delay of further litigation, and the other relevant factors.

### 1. The Amount Offered in Settlement

"[T]he critical component of any settlement is the amount of relief obtained by the class." *Destefano v. Zynga, Inc.*, 2016 WL 537946, at *11 (N.D. Cal. Feb. 11, 2016). However, it "is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Rodriguez*, 2018 WL 1920256, at *4. By definition, a settlement "embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation." *Officers of Justice*, 688 F.2d at 624; *see also Schaffer v. Litton Loan Servicing, LP*, 2012 WL 10274679, *11 (C.D. Cal. Nov. 13, 2012) ("Estimates of what constitutes a fair settlement figure are tempered by factors such as the risk of losing at trial, the expense of litigating the case, and the expected delay in recovery (often measured in years).").

The Settlement provides for a payment from Dr. Kapoor's personal assets of at least $700,000 in cash, with the potential to increase to $10,000,000 in cash. As noted above, Dr. Kapoor's financial condition and the circumstances surrounding payment of his Criminal Obligation, as well as his inability to access any insurance coverage, made obtaining anything more than the Settlement Consideration highly unlikely. ¶¶ 96-101. Accepting material proceeds now, particularly with the potential for additional proceeds in the future, rather than pursing a likely judgment-proof defendant after trial, is in the best interests of the Class. *See, e.g., Singh v. Roadrunner Intermodal Servs., LLC*, 2019 WL 316814, at *4 (E.D. Cal. Jan. 24, 2019) (noting risk of continued litigation "on defendants' financial condition and, in turn, upon defendant's ability to pay the settlement" as favoring approval of settlement).

The Settlement Consideration also represents a meaningful percentage of the Class's estimated aggregate damages—ranging from approximately $34.7 million to $189.5 million based on Class Representative's ability to establish damages based on certain of the Corrective Disclosures.[9] The Kapoor Settlement—on its own and without considering the recoveries from defendants Baker and Babich—represents between approximately 0.37% and 2.02% of the Class's damages assuming only the $700,000 payment is made, and potentially ranges between approximately 5.28% and 28.82% of the Class's damages if the Class receives the maximum $10,000,000 contemplated by the Settlement. *See generally In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair.").[10]

### 2.      The Risks of Continued Litigation

"To determine whether the proposed settlement is fair, reasonable, and adequate, the Court must balance the continuing risks of litigation (including the strengths and weaknesses of the Plaintiffs' case), with the benefits afforded to members of the Class, and the immediacy and certainty of a substantial recovery." *Velazquez v. Int'l Marine & Indus. Applicators, LLC*, 2018 WL 828199, at *4 (S.D. Cal. Feb. 9, 2018). While Class Representative and Class Counsel believe in their claims and were prepared to take their case against Dr. Kapoor to trial, they also acknowledge that doing so posed major challenges and risks. *See In re OmniVision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) ("merely reaching trial is no guarantee of recovery").

*First*, Class Representative faced challenges to establishing Dr. Kapoor's liability. Had the Action proceeded to trial, Dr. Kapoor, in addition to arguing that the sole

---

[9]      At trial, Dr. Kapoor would be expected to argue that damages were zero.

[10]      *See also* Janeen McIntosh & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2019 Full-Year Review*, NERA Economic Consulting, 20 (Feb. 12, 2020), https://www.nera.com/content/dam/nera/publications/2020/PUB_YEAR_END_Trends_012_120_Final.pdf (finding between 2015 and 2018, the median ratio of settlements to investor losses increased from 1.6% in 2015 to 2.6% in 2018, and declined from 2.6% to 2.1% in 2019).

statement for which he is being sued was both forward-looking (and thus protected by the PSLRA's "safe harbor" provision) and an inactionable statement of opinion, was prepared to offer evidence suggesting that the statement was, in fact, true. Dr. Kapoor contends that such evidence shows that Insys engaged in substantial efforts in and around fiscal year 2014 to develop a comprehensive program to build awareness among oncologists about the key features and benefits of Subsys, and that those efforts were successful and did, in fact, result in "expanding the usage of Subsys" in FY2014 and as of March 3, 2015. ¶¶ 87-88. Dr. Kapoor would also point to the lack of traditional hallmarks of scienter in this case, including that he did not sell any of his Insys shares during the Class Period— an argument that could have resonated with a jury because Dr. Kapoor owned approximately 60% of Insys' common stock at that time. ¶ 89.

*Second*, Class Representative faced risks in proving loss causation and damages. To establish these elements, Class Representative would have to prove that the revelation of fraud-related information proximately caused the declines in Insys' stock price in response to the alleged Corrective Disclosures, and that those fraud-related causes could be parsed out from any potential non-fraud related news or publicly released information. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345-46 (2005) (plaintiff bears the burden of proving "that the defendant's misrepresentations caused the loss for which the plaintiff seeks to recover"). At trial, Dr. Kapoor would have presented evidence (through his expert) contending, among other things, that: (i) none of the Corrective Disclosures actually "corrected" the Form 10-K Statement because neither mentioned Insys' oncology efforts one way or the other, identified the source or amount of any Subsys sales, nor gave any indication that Insys was not making efforts to have oncologists prescribe the drug; and (ii) none of the Corrective Disclosures revealed "new" information that could explain the price declines on each of those days. ¶¶ 90-93. Dr. Kapoor also would have argued that Insys' stock price did not suffer a statistically significant decline on January 25, 2016.

¶ 94.[11] Thus, because the determination of loss causation and damages is a complicated process requiring expert testimony, the jury's assessments of the expert evidence could vary substantially at trial, reducing this crucial element to an uncertain "battle of experts." *See In re Celera Corp. Sec. Litig.*, 2015 WL 7351449, at *6 (N.D. Cal. Nov. 20, 2015) (risks related to "battle of the experts" favored of settlement approval).

   *Finally*, as noted above, it was uncertain whether Class Representative would be able to collect anything from Dr. Kapoor following a trial judgment in the Class's favor. If realized, any one of the foregoing risks could have precluded a recovery from Dr. Kapoor.[12] The Settlement, in contrast, assures a cash recovery for the benefit of the Class, and this factor supports the Settlement.

### 3. The Complexity, Expense, and Duration of Continued Litigation

   The "expense, complexity and likely duration of further litigation" or "delay of trial and appeal" also should be taken into account when assessing a proposed settlement. *See Churchill*, 361 F.3d at 575; Rule 23(e)(2)(C)(i). Courts have consistently found securities fraud actions "notoriously complex[]" and the settlement of such actions appropriate to "circumvent[] the difficulty and uncertainty inherent in long, costly trials." *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 2006 WL 903236, at *8 (S.D.N.Y. Apr. 6, 2006); *see also In re Heritage Bond Litig.*, 2005 WL 1594403, at *6 (C.D. Cal. June 10, 2005) (class actions have a well-deserved reputation as being the most complex). "Generally, unless the settlement is clearly inadequate, its acceptance and approval are

---

[11]    If Class Representative were to lose one or more of the Corrective Disclosures at trial, the Class's recoverable damages would have been greatly reduced. For example, if the Class lost the January 25, 2016 Corrective Disclosure, but was able to prove loss causation as to the first two Corrective Disclosures, estimated aggregate damages would drop from approximately $189.5 million to approximately $123.3 million. If the Class lost the December 3, 2015 disclosure, estimated damages tied solely to the remaining November 4, 2015 disclosure would drop to approximately $34.7 million. ¶ 95.

[12]    The third Ninth Circuit factor (i.e., the risk of maintaining class action status throughout the trial) also supports the Settlement, as a court may exercise its discretion to re-evaluate the appropriateness of class certification at any time. *See Omnivision*, 559 F. Supp. 2d at 1041 ("there is no guarantee the certification would survive through trial, as Defendants might have sought decertification or modification of the class").

preferable to lengthy and expensive litigation with uncertain results." *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015).

Here, trial was less than two months away when the Settlement was reached. Trial would invariably be followed by post-trial motions and appeals, resulting in additional years of complex and expensive litigation. *In re Amgen, Inc. Sec. Litig.*, 2016 WL 10571773, at *3 (C.D. Cal. Oct. 25, 2016) ("A trial of a complex, fact-intensive case like this could have taken weeks, and the likely appeals of rulings on summary judgment and at trial could have added years to the litigation."). Further, the expense of litigating this Action for more than four years was significant. A trial would have increased those expenses considerably. ¶ 101. *See Hartless v. Clorox Co.*, 273 F.R.D. 630, 640 (S.D. Cal. 2011), *aff'd in part*, 473 F. App'x 716 (9th Cir. 2012) ("Considering these risks, expenses and delays, an immediate and certain recovery for class members . . . favors settlement of this action."). This factor weighs in favor of approving the Settlement.

### 4. The Extent of Discovery Completed and Stage of Proceedings

The Kapoor Settlement was reached after more than four years of litigation, including extensive fact and expert discovery efforts. Before reaching the Settlement, Class Representative reviewed and analyzed more than 14 million pages of documents, took or defended sixteen fact and expert depositions, served detailed expert reports pertaining to liability and damages issues, and litigated numerous motions, including defendants' Summary Judgment Motion. ¶¶ 31-74. Indeed, at the time of settlement, the parties were preparing for a July 9, 2020 final pre-trial conference leading up to a trial commencing on August 17, 2020. Thus, the Settling Parties' respective positions were clear and known, as was the evidence they would use to prove their case, and they had sufficient information to properly assess the Settlement. *See Kmiec v. Powerwave Techs., Inc.*, 2016 WL 5938709, at *4 (C.D. Cal. July 11, 2016) ("[T]he fact that the parties did not settle until after the conclusion of fact discovery indicates that Plaintiffs were well aware of the merits of their case and the difficulties awaiting them at trial."); *Amgen*, 2016 WL 10571773, at *4 (finding "in favor of granting final approval" where discovery was

complete and "case was on the verge of trial"). This factor strongly weighs in favor of the Settlement.

### 5.    Presence of a Governmental Participant

Although there were regulatory investigations and criminal charges in connection with Insys' off-label marketing of Subsys, there was no parallel action by the SEC. Also, pursuant to the Class Action Fairness Act ("CAFA"), Dr. Kapoor provided notice of the Settlement to appropriate state and federal officials. *See* Stipulation, ¶ 21. To date, none of these officials has raised any objection or concern regarding the Settlement. *LinkedIn*, 309 F.R.D. at 589 (finding no objections favored settlement).

### 6.    The Reaction of Class Members

Courts in the Ninth Circuit typically consider the class's reaction to the settlement at the final approval stage. *See In re Google LLC St. View Elec. Commc'ns Litig.*, 2020 WL 1288377, at *15 (N.D. Cal. Mar. 18, 2020); *Morgan v. Childtime Childcare, Inc.*, 2020 WL 218515, at *2 (C.D. Cal. Jan. 6, 2020) ("Lack of objection speaks volumes for a positive class reaction to the settlement."). The deadline for Class Members to object to the Settlement is September 24, 2020. ¶ 107. To date, there have been no objections. *Id*.[13]

### D.    The Remaining Rule 23(e)(2) Factors Support Final Approval

Amended Rule 23(e)(2) also instructs courts to consider: (i) the effectiveness of the proposed method of distributing the relief provided to the class, including the method of processing class member claims; (ii) the terms of any proposed award of attorney's fees, including the timing of payment; (iii) any other agreement made in connection with the proposed settlement; and (iv) whether class members are treated equitably relative to each other. *See* Rule 23(e)(2)(C)(ii)-(iv), (e)(2)(D). These factors also support final approval of the Kapoor Settlement.

*First*, the proposed method of distribution and claims processing ensures equitable treatment of Class Members, whose claims will be processed pursuant to a standard

---

[13]    Class Representative will address objections, if any, in his reply submissions to be filed on or before October 8, 2020.

method routinely found effective in securities class actions. A.B. Data will review and process all Claims received, provide Claimants with an opportunity to cure any deficiency or request judicial review of the denial of their Claims, if applicable, and will ultimately mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund, as calculated under the Plan. *See infra* Section III; ¶¶ 108-114. Importantly, none of the Settlement proceeds will revert to Dr. Kapoor. *See* Doc. 371-1, ¶ 13.

*Second*, the relief provided by the Settlement remains adequate upon consideration of the terms of the requested attorneys' fees. As set forth in the Fee Memorandum, the requested attorneys' fees of 30% of the Settlement Fund is reasonable in light of the efforts of Class Counsel over the past four years in taking this Action to the brink of trial, as well as the significant risks and expenses Class Counsel shouldered at every step. Importantly, the 30% fee request is ***inclusive*** of any Litigation Expenses incurred by Plaintiffs' Counsel in connection with the Action through May 22, 2020 that were not sought to be reimbursed in connection with the Baker Settlement as well as additional unreimbursed expenses incurred from May 23, 2020 through July 1, 2020. Plaintiffs' Counsel ***are not*** separately seeking reimbursement of any of these expenses in connection with the Settlement.

A 30% fee (which is *inclusive* of Plaintiffs' Counsel's unreimbursed expenses) is also supported by Ninth Circuit case law.[14] Although the Ninth Circuit has established 25% of the fund as the 'benchmark' fee award in common fund cases, *see, e.g., Heritage Bond*, 2005 WL 1594403, at *18, "[t]hat percentage amount can then be adjusted upward or downward to account for any unusual circumstances involved in th[e] case." *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989). Indeed, courts award fees in excess of 30% in appropriate circumstances. *See, e.g.*, Order Awarding

---

[14]     Given that unreimbursed expenses total $548,923.82, Class Counsel's Fee Application will not result in actual "fees" unless the Settlement Consideration ultimately exceeds $1,829,746.07. ¶¶ 115-117. If the Settlement Consideration is below this amount (e.g., only the $700,000 Minimum Settlement Amount is collected), the Fee Application, if approved, will essentially be for reimbursement of unreimbursed expenses. *Id.*

Attorneys' Fees and Expenses and Awards to Lead Plaintiffs Pursuant to 15 U.S.C. § 78u-4(a)(4) [199], *Turocy v. El Pollo Loco Holdings, Inc.*, No. 8:15-cv-01343 (C.D. Cal. Aug. 27, 2019), ECF No. 219 (awarding 30% fee); *Mego*, 213 F.3d at 463 (upholding 33.3% fee). As detailed in the Fee Memorandum, the circumstances of this case justify an award modestly exceeding the benchmark.[15]

*Third*, as previously disclosed, the only agreement the Settling Parties entered into in addition to the Stipulation was the preceding term sheet.

* * *

For the reasons above and in the Whitman Declaration, the Kapoor Settlement is fair, reasonable, and adequate and, therefore, warrants the Court's final approval.

## III.   THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION

A plan for allocating settlement proceeds under Rule 23 is evaluated under the same standard of review applicable to the settlement as a whole—the plan must be fair and reasonable. *See Class Plaintiffs*, 955 F.2d at 1284; *Amgen*, 2016 WL 10571773, at *7. An allocation formula need only have a "reasonable, rational basis, particularly if recommended by experienced and competent counsel." *Nguyen v. Radient Pharm. Corp.*, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014). "A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable." *In re Oracle Sec. Litig.*, 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994).

---

[15]   Additionally, the proposal that Class Counsel receive their award of attorneys' fees upon issuance of an order awarding such fees is appropriate and consistent with common practice in cases of this nature. The Stipulation provides that if the Settlement is ultimately terminated or the fee award is later reduced or reversed, Class Counsel will refund or repay the subject amount to the Settlement Fund. This is a common provision. *See, e.g.*, *NECA-IBEW Health & Welfare Fund v. Goldman, Sachs & Co.*, 2016 WL 3369534, at *1 (S.D.N.Y. May 2, 2016) ("the fees and expenses awarded herein shall be paid from the Settlement Fund to Lead Counsel immediately upon entry of this Order, notwithstanding the existence of any timely filed objections thereto, if any, or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof, subject to Plaintiffs' Counsel's obligation to repay all such amounts with interest . . . ."); *In re AXA Rosenberg Inv'r Litig.*, 2012 WL 12920617, at *2 (N.D. Cal. Apr. 2, 2012) (same).

The Plan proposed here provides an equitable basis to allocate the Net Settlement Fund among all Authorized Claimants, and was developed by Class Counsel with the assistance of its damages expert. ¶ 110. The Plan (as set forth in Appendix A to the Settlement Notice) is the same plan that Class Representative has proposed for approval in connection with the Baker Settlement.

The Plan is based upon the estimated amount of artificial inflation in the price of Insys common stock during the Class Period. ¶ 110. To have a loss under the Plan, a Claimant must have purchased or otherwise acquired Insys common stock during the Class Period and held those shares through at least one of the alleged Corrective Disclosures. ¶ 111. Further, a Claimant's loss under the Plan will depend upon several factors, including the date(s) when the Claimant purchased/acquired their shares of Insys common stock during the Class Period, whether such shares were sold and if so, when and at what price, taking into account the PSLRA's statutory limitation on recoverable damages. *Id.* Authorized Claimants will recover their proportional "pro rata" amount of the Net Settlement Fund based on their loss. *See In re Audioeye, Inc., Sec. Litig.*, 2017 WL 5514690, at *2 (D. Ariz. May 8, 2017) (finding plan of allocation providing for distribution to claimants on a pro rata basis to be fair and reasonable).

The Plan is similar to those utilized in other securities class actions. *See, e.g., Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at*11 (N.D. Cal. Sept. 4, 2018); *Nguyen*, 2014 WL 1802293, at *5; *Ansell v. Laikin*, 2012 WL 13034812, at *9 (C.D. Cal. July 11, 2012). To date, no objections to the Plan have been filed, warranting approval. ¶ 114.

## IV. NOTICE OF THE KAPOOR SETTLEMENT SATISFIED RULE 23 AND DUE PROCESS

Notice of the Kapoor Settlement satisfied both: (i) Rule 23 as it was "the best notice . . . practicable under the circumstances" and directed "in a reasonable manner to all class members who would be bound by the" Settlement, *see* Rule 23(c)(2)(B), (e)(1)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-75 (1974); and (ii) due process as it was "reasonably calculated, under all the circumstances, to apprise interested

1   parties of the pendency of the action and afford them an opportunity to present their

2   objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

3   In accordance with the Preliminary Approval Order, A.B. Data mailed Postcard

4   Settlement Notices to the potential Class Members, and Nominees (in bulk), who

5   previously received the Class Notice and/or notice of the Baker Settlement, as well as any

6   other identified Class Members. A.B. Data also mailed copies of the Settlement Notice

7   and Claim Form to Nominees. *See* Schachter Decl. (attached as Ex. 2 to the Whitman

8   Decl.), ¶¶ 3-10. In addition, the Summary Settlement Notice was published in *Investor's*

9   *Business Daily* and transmitted over *PRNewswire. Id.*, ¶ 12. A.B. Data also updated the

10  Website, www.InsysRXSecuritiesLitigation.com, and toll-free helpline for this matter,

11  with information about the Kapoor Settlement. *Id.*, ¶¶ 13-14. Copies of the Settlement

12  Notice and Claim Form are also available on Class Counsel's website, www.ktmc.com.

13  The content disseminated through this notice campaign was also more than

14  adequate, as it "generally describe[d] the terms of the settlement in sufficient detail to

15  alert those with adverse viewpoints to investigate and to come forward and be heard."

16  *Young v. LG Chem Ltd.*, 783 F. App'x 727, 736 (9th Cir. 2019). Collectively, the notices

17  provide the necessary information for Class Members to make an informed decision

18  regarding the Settlement, as required by the PSLRA (*see* 15 U.S.C. § 78u-4(a)(7)), and

19  fairly apprises them of their rights with respect to the Settlement. *See, e.g., In re Apollo*

20  *Grp. Inc. Sec. Litig.*, 2012 WL 1378677, at *3 (D. Ariz. Apr. 20, 2012).

21  **V.    CONCLUSION**

22  For the reasons stated herein and in the Whitman Declaration, Class

23  Representative respectfully requests that the Court grant final approval of the Kapoor

24  Settlement and the proposed Plan of Allocation.

25  DATED: September 10, 2020          Respectfully submitted,

26                                      **KESSLER TOPAZ**
                                        **MELTZER & CHECK, LLP**
27
                                        *s/ Johnston de F. Whitman, Jr.*
28                                      Johnston de F. Whitman, Jr. (admitted *Pro Hac Vice*)

jwhitman@ktmc.com
Andrew L. Zivitz (admitted *Pro Hac Vice*)
azivitz@ktmc.com
Jonathan F. Neumann (admitted *Pro Hac Vice*)
jneumann@ktmc.com
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

-and-

Jennifer L. Joost (admitted *Pro Hac Vice*)
jjoost@ktmc.com
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone: (415) 400-3000
Facsimile: (415) 400-3001

*Lead Counsel for Lead Plaintiff, Class
Representative, and the Class*

**BONNETT, FAIRBOURN,
FRIEDMAN & BALINT, P.C.**
Francis J. Balint, Jr.
fbalint@bffb.com
Andrew S. Friedman
afriedman@bffb.com
2325 E. Camelback Road, Suite 300
Phoenix, AZ 85016
Telephone: (602) 274-1100
Facsimile: (602) 274-1199

*Liaison Counsel for Lead Plaintiff, Class
Representative, and the Class*

1

## CERTIFICATE OF SERVICE

I hereby certify that on September 10, 2020, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to those persons who are CM/ECF registrants:

Don Bivens
dbivens@swlaw.com
Anthony T. King
aking@swlaw.com
**SNELL & WILMER LLP**
One Arizona Center
400 E. Van Buren
Phoenix, AZ 85004
Telephone: 602-382-6513
Facsimile: 602-382-6070

David B. Rosenbaum
drosenbaum@omlaw.com
**OSBORN MALEDON PA**
2929 N. Central Ave.,
21st Floor
Phoenix, AZ 85012
Telephone: 602-640-9000
Facsimile: 602-640-9050

George J. Coleman
gjc@slwplc.com
Michael K. Foy
mkf@slwplc.com
**SALMON, LEWIS &
WELDON, P.L.C.**
2850 E. Camelback Road,
Suite 200
Phoenix, AZ 85016
Telephone: 602-801-9060
Facsimile:: 602-801-9070

William Klain
wklain@lang-klain.com
Zachary Rosenberg
zrosenberg@lang-klain.com
**LANG & KLAIN, PC**
6730 N. Scottsdale Road
Suite 101
Scottsdale, AZ 85253
Telephone: 480-534-4900
Facsimile: 480-970-5034

Bahram Seyedin-Noor
bahram@altolit.com
Bryan Ketroser
bryan@altolit.com
Jared Kopel
jared@altolit.com
Ian Browning
ian@altolit.com
**ALTO LITIGATION**
4 Embarcadero Center,
Suite 1400
San Francisco, CA 94111
Telephone: 415-779-2586
Facsimile: 866-654-7207

Brian T. Kelly
bkelly@nixonpeabody.com
Matthew L. McLaughlin
mmclaughlin@nixonpeabody.com
George J. Skelly
gskelly@nixonpeabody.com
**NIXON PEABODY LLP**
Exchange Place
53 State St.
Boston, MA 02109
Telephone: 617-345-1000
Facsimile: 617-345-1300

Russell Piccoli
rp@winazlaw.com
**RUSSELL PICCOLI PLC**
701 N. 44th St.
Phoenix, AZ 85008
Telephone: 480-429-3000
Facsimile: 480-429-3100

*s/ Johnston de F. Whitman, Jr.*