**KESSLER TOPAZ MELTZER & CHECK, LLP**
Andrew L. Zivitz
azivitz@ktmc.com
Johnston de F. Whitman, Jr.
jwhitman@ktmc.com
Jonathan F. Neumann
jneumann@ktmc.com
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

-and-

Jennifer L. Joost
jjoost@ktmc.com
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone: (415) 400-3000
Facsimile: (415) 400-3001

*Lead Counsel for Lead Plaintiff, Class Representative, and the Class*

**BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C.**
Francis J. Balint, Jr.
fbalint@bffb.com
Andrew S. Friedman
afriedman@bffb.com
2325 E. Camelback Road, Suite 300
Phoenix, AZ 85016
Telephone: (602) 274-1100
Facsimile: (602) 274-1199

*Liaison Counsel for Lead Plaintiff, Class Representative, and the Class*

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Richard Di Donato, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>Insys Therapeutics, Inc.; Michael L. Babich; Darryl S. Baker; and John N. Kapoor,<br><br>Defendants. | No. 16-cv-00302-NVW<br><br>**CLASS ACTION**<br><br>**CLASS REPRESENTATIVE'S MOTION FOR FINAL APPROVAL OF SETTLEMENT WITH DEFENDANT MICHAEL L. BABICH AND PLAN OF ALLOCATION; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |

## <u>TABLE OF CONTENTS</u>

**Page**

I.     PRELIMINARY STATEMENT.......................................................................1

II.    THE BABICH SETTLEMENT WARRANTS FINAL APPROVAL................3

    A.     Class Representative and Class Counsel Have Adequately
        Represented the Class in this Action........................................................5

    B.     The Babich Settlement Was Negotiated at Arm's-Length......................6

    C.     The Babich Settlement Provides the Class Adequate Relief,
        Considering the Costs, Risks, and Delay of Litigation and Other
        Relevant Factors......................................................................................7

        1.     The Risks of Continued Litigation................................................7

            a.     The Significant Risk of Non-Payment..............................8

            b.     Risks to Establishing Liability and Damages ..................9

        2.     The Amount Offered in Settlement.............................................10

        3.     The Complexity, Expense, and Duration of Continued
            Litigation ...................................................................................12

        4.     The Extent of Discovery Completed and Stage of
            Proceedings ...............................................................................13

        5.     Presence of a Governmental Participant .....................................13

        6.     The Reaction of Class Members ..................................................14

    D.     The Remaining Rule 23(e)(2) Factors Support Final Approval ............14

III.   THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION...........15

IV.    SETTLEMENT NOTICE SATISFIED RULE 23 AND DUE PROCESS.......16

V.     CONCLUSION ............................................................................................17

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Amgen, Inc. Sec. Litig.*,
  2016 WL 10571773 (C.D. Cal. Oct. 25, 2016)..............................12, 13, 15

*Ansell v. Laikin*,
  2012 WL 13034812 (C.D. Cal. July 11, 2012).........................................16

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
  2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ..............................................12

*In re Apollo Grp. Inc. Sec. Litig.*,
  2012 WL 1378677 (D. Ariz. Apr. 20, 2012)............................................17

*In re Audioeye, Inc., Sec. Litig.*,
  2017 WL 5514690 (D. Ariz. May 8, 2017) ..............................................16

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
  2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) .............................................8

*Campbell v. Facebook, Inc.*,
  951 F.3d 1106 (9th Cir. 2020) ....................................................3-4, 4

*In re Celera Corp. Sec. Litig.*,
  2015 WL 7351449 (N.D. Cal. Nov. 20, 2015) ..........................................10

*In re Chrysler-Dodge-Jeep Ecodiesel® Mktg., Sales Practices,*
  *& Prods. Liab. Litig.*,
  2019 WL 2554232 (N.D. Cal. May 3, 2019)...............................................5

*Churchill Vill., L.L.C. v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004) ...................................................4, 6, 7, 12

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) .........................................................4, 15

*de Rommerswael v. Auerbach*,
  2018 WL 6003560 (C.D. Cal. Nov. 5, 2018)...............................................6

*Destefano v. Zynga, Inc.*,
  2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ............................................10

*Dura Pharm., Inc. v. Broudo*,
  544 U.S. 336 (2005).....................................................................10

ii

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) ................................................................................................. 16

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) ....................................................................................... 5

*Hartless v. Clorox Co.*,
    273 F.R.D. 630 (S.D. Cal. 2011) ............................................................................12-13

*Hefler v. Wells Fargo & Co.*,
    2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) ........................................................... 16

*In re Heritage Bond Litig.*,
    2005 WL 1594403 (C.D. Cal. June 10, 2005) ........................................................... 12

*In re Hyundai & Kia Fuel Econ. Litig.*,
    926 F.3d 539 (9th Cir. 2019) ....................................................................................... 3

*Juvera v. Salcido*,
    2013 WL 6628039 (D. Ariz. Dec. 17, 2013) ............................................................... 3

*Kmiec v. Powerwave Techs., Inc.*,
    2016 WL 5938709 (C.D. Cal. July 11, 2016) ............................................................ 13

*Knapper v. Cox Commc'ns, Inc.*,
    329 F.R.D. 238 (D. Ariz. 2019) ................................................................................... 5

*Lane v. Facebook, Inc.*,
    696 F.3d 811 (9th Cir. 2012) ....................................................................................... 4

*In re LinkedIn User Privacy Litig.*,
    309 F.R.D. 573 (N.D. Cal. 2015)........................................................................... 12, 14

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ..................................................................................... 10

*Moreno v. S.F. Bay Area Rapid Transit Dist.*,
    2019 WL 343472 (N.D. Cal. Jan. 28, 2019)................................................................ 7

*Morgan v. Childtime Childcare, Inc.*,
    2020 WL 218515 (C.D. Cal. Jan. 6, 2020) ................................................................ 14

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
    339 U.S. 306 (1950)................................................................................................... 16

*Nguyen v. Radient Pharm. Corp.*,
    2014 WL 1802293 (C.D. Cal. May 6, 2014) ........................................................ 15, 16

*Officers for Justice v. Civil Serv. Comm'n of the City & Cty. of S.F.*,
   688 F.2d 615 (9th Cir. 1982) ..............................................................7, 10-11

*In re OmniVision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ........................................8, 10, 15

*In re Oracle Sec. Litig.*,
   1994 WL 502054 (N.D. Cal. June 18, 1994) ...................................... 15

*In re Polaroid ERISA Litig.*,
   240 F.R.D. 65 (S.D.N.Y. 2006) ............................................................ 5

*Rodriguez v. Bumble Bee Foods*,
   2018 WL 1920256 (S.D. Cal. Apr. 24, 2018).............................. 6, 7, 10

*Schaffer v. Litton Loan Servicing, LP*,
   2012 WL 10274679 (C.D. Cal. Nov. 13, 2012) ..............................10-11

*Singh v. Roadrunner Intermodal Servs., LLC*,
   2019 WL 316814 (E.D. Cal. Jan. 24, 2019) ...................................... 11

*Taylor v. Shippers Transp. Express, Inc.*,
   2015 WL 12658458 (C.D. Cal. May 14, 2015) .................................. 6

*Velazquez v. Int'l Marine & Indus. Applicators, LLC*,
   2018 WL 828199 (S.D. Cal. Feb. 9, 2018).......................................7-8

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices,*
   *& Prods. Liab. Litig.*,
   895 F.3d 597 (9th Cir. 2018) .............................................................. 3

*Young v. LG Chem Ltd.*,
   783 F. App'x 727 (9th Cir. 2019) .................................................... 17

**Statutes**

15 U.S.C. § 78u-4(a)(7) .................................................................................... 17

**Other Authorities**

Fed. R. Civ. P. 23 ...............................................................................*passim*

Janeen McIntosh & Svetlana Starykh, *Recent Trends in Securities Class
Action Litigation: 2019 Full-Year Review*, NERA Economic Consulting
(Feb. 12, 2020), https://www.nera.com/content/dam/nera/publications/
2020/PUB_YEAR_END_Trends_012 120_Final.pdf .................................. 12

Court-appointed Class Representative Clark Miller, on behalf of himself and the Court-certified Class, respectfully moves this Court, pursuant to Federal Rule of Civil Procedure ("Rule") 23, for: (i) final approval of the proposed settlement of this securities class action with Michael L. Babich on the terms set forth in the Stipulation and Agreement of Settlement Between Lead Plaintiff and Defendant Michael L. Babich dated July 21, 2020 (Doc. 399-1) ("Stipulation"); and (ii) approval of the proposed plan for allocating the net Settlement proceeds to the Class ("Plan of Allocation" or "Plan").[1]

## I.      PRELIMINARY STATEMENT

Subject to Court approval, Class Representative, through his counsel, has agreed to settle all claims asserted in the Action against defendant Michael L. Babich ("Mr. Babich") in exchange for $250,000 in cash from Mr. Babich's personal resources ("Settlement" or "Babich Settlement"). This Settlement is the third—and final—settlement reached in the Action and, if approved, the Babich Settlement, combined with the settlements with defendants Darryl S. Baker and John N. Kapoor, will provide the Class with a collective recovery of at least $2.95 million, with the potential to increase to as much as $12.25 million, and will resolve the Action in its entirety.

The Babich Settlement follows more than four years of litigation—including an extensive investigation, the completion of fact and expert discovery, hard-fought motion practice, substantial trial preparation, and mediation efforts, and was reached just weeks before trial was set to commence. Class Representative believes the Settlement is a favorable result for the Class, particularly in light of the severe limitations Class Representative faced in collecting ***any*** recovery from Mr. Babich.

---

[1]      All capitalized terms not defined herein have the meanings ascribed to them in the Stipulation or in the Declaration of Johnston de F. Whitman, Jr. in Support of (I) Class Representative's Motion for Final Approval of Settlement with Defendant Michael L. Babich and Plan of Allocation; and (II) Class Counsel's Motion for Reimbursement of Litigation Expenses ("Whitman Declaration"). The Whitman Declaration is an integral part of this submission. Citations to "¶ _" herein refer to paragraphs in the Whitman Declaration. Unless otherwise noted, all internal citations and quotations are omitted.

1

Indeed, as a result of Mr. Babich's guilty plea in *United States v. Babich, et al.*, No. 16-cr-10343-ADB (D. Mass.) ("Criminal Action") stemming from actions he committed in connection with marketing Subsys, Mr. Babich is obligated to pay more than $74 million in forfeiture and restitution ("Criminal Obligation")[2]—an amount that exceeded his net worth by more than $49 million at the time the Settling Parties entered into the Stipulation. Doc. 401 at 2.[3] Had Class Representative succeeded in obtaining a judgment against Mr. Babich at trial, the Class would likely have recovered nothing, as it was likely that the federal government would seek to collect on Mr. Babich's Criminal Obligation, almost certainly driving Mr. Babich into bankruptcy. Docs. 401 at 7; 401-2, ¶ 8.[4] At the time of the Settlement, Mr. Babich was also a defendant in at least twenty other pending actions, providing a further limitation on Mr. Babich's ability to satisfy a judgment in the Action due to this additional financial exposure (estimated to exceed $3 billion in damages) and his ongoing need to fund a defense in these actions. Doc. 401 at 2. Moreover, there was no insurance available to fund any portion of a settlement or a judgment against Mr. Babich in the Action, and any recovery obtained from Mr. Babich had to come entirely from his limited, constrained, and diminishing personal resources. Doc. 399 at 10-12.

In addition to the risk of non-payment, Class Representative and Class Counsel, in reaching the Settlement, also carefully considered the risks of taking the Action to trial against Mr. Babich. Had the Action proceeded to trial, Mr. Babich was prepared to mount aggressive defenses, particularly on the elements of falsity and loss causation. If the jury

---

[2]     While Mr. Babich is jointly and severally liable for approximately $60 million in restitution, he is solely responsible for paying a more than $14 million forfeiture award. Doc. 401-2, ¶ 6.

[3]     As of June 2020, Mr. Babich had approximately $23.1 million in assets, consisting of approximately $21.6 million in marketable and unmarketable securities, a significant portion of which was substantially illiquid, and $1.5 million in cash assets. Doc. 401-2, ¶ 5.

[4]     Mr. Babich's Criminal Obligation is in addition to his obligations in connection with stipulated judgments entered into with the State of Arizona and a public health authority (with covenants not to execute unless Mr. Babich voluntarily files for bankruptcy). Doc. 401 at 5-6; *see also infra* Section II.C.1.b.

sided with Mr. Babich on any of his defenses, the Class would recover nothing. ¶¶ 87, 95-102; *see also infra* Section II.C.1.b. The Settlement eliminates these risks.

In its July 31, 2020 Preliminary Approval Order, the Court found the Babich Settlement likely to be finally approved as fair, reasonable, and adequate to the Class. Doc. 402, ¶ 1. The Settlement has the full support of Class Representative, and to date, the reaction of the Class has been positive. While the October 28, 2020 objection deadline has not yet passed, following the dissemination of more than 31,300 Postcard Settlement Notices and 4,200 Settlement Notices to Class Members and Nominees, as well as publication of the Summary Notice, no Class Member has yet objected to any aspect of the Settlement or the Plan of Allocation. ¶¶ 12, 108.

Given the foregoing considerations and the factors addressed below, Class Representative and Class Counsel respectfully submit that: (i) the Babich Settlement meets the standards for final approval under Rule 23, and is a fair, reasonable, and adequate result for the Class; and (ii) the Plan of Allocation is a fair and reasonable method for equitably distributing the Net Settlement Fund.

## II.   THE BABICH SETTLEMENT WARRANTS FINAL APPROVAL

Rule 23(e)(2) requires judicial approval of any proposed class action settlement. Whether to grant such approval lies within the district court's sound discretion. *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 895 F.3d 597, 611 (9th Cir. 2018) ("[d]eciding whether a settlement is fair is ultimately 'an amalgam of delicate balancing, gross approximations and rough justice,' . . . best left to the district judge, who has … a firsthand grasp of the claims, the class, the evidence, and the course of the proceedings"). Such discretion should be guided by this Circuit's "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019); *Juvera v. Salcido*, 2013 WL 6628039, at *9 (D. Ariz. Dec. 17, 2013) ("The Ninth Circuit has declared that a strong judicial policy favors settlement of class actions.").

"Under . . . [Rule] 23(e)(2), a district court may approve a class action settlement

only after finding that the settlement is fair, reasonable, and adequate." *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1120-21 (9th Cir. 2020). In making that determination, Rule 23(e)(2) provides that a court should consider whether:

> (A)   the class representatives and class counsel have adequately represented the class;
>
> (B)   the proposal was negotiated at arm's length;
>
> (C)   the relief provided for the class is adequate, taking into account:
>
>> (i)   the costs, risks, and delay of trial and appeal;
>>
>> (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii)   the terms of any proposed award of attorney's fees, including timing of payment;
>>
>> (iv)   any agreement required to be identified under Rule 23(e)(3); and
>
> (D)   the proposal treats class members equitably relative to each other.

Consistent with this guidance, the Ninth Circuit has identified similar factors for courts to consider in deciding whether to approve a class action settlement:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).[5] Moreover, in approving a settlement, a court "need not reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992); *see also Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012).

---

[5]   "District courts may consider some or all of these factors." *Campbell*, 951 F.3d at 1121.

4

At the preliminary approval stage, this Court considered the Rule 23(e)(2) factors in assessing the Settlement, and found it to be fair, reasonable, and adequate, subject to further consideration at the Settlement Fairness Hearing. Doc. 402, ¶ 1. That conclusion applies equally now. *See, e.g., In re Chrysler-Dodge-Jeep Ecodiesel® Mktg., Sales Practices, & Prods. Liab. Litig.*, 2019 WL 2554232, at *2 (N.D. Cal. May 3, 2019) (finding "conclusions [made in granting preliminary approval] stand and counsel equally in favor of final approval now"). Accordingly, Class Representative respectfully submits that the Settlement is fair, reasonable, adequate, and warrants final approval.

**A.      Class Representative and Class Counsel Have Adequately Represented the Class in this Action**

In determining whether to approve a class action settlement, the court must first consider whether "class representatives and class counsel have adequately represented the class." Rule 23(e)(2)(A). The adequacy requirement is satisfied if the representative parties and counsel have fairly and adequately protected the interests of the class. *See Knapper v. Cox Commc'ns, Inc.*, 329 F.R.D. 238, 243 (D. Ariz. 2019).

As previously addressed in the Baker and Kapoor Settlement submissions, Class Representative and Class Counsel have adequately represented the Class in both their prosecution and resolution of the Action. Class Representative has monitored and supervised the prosecution of the Action since its outset. *See* Declaration of Clark Miller ("Miller Decl."), attached as Ex. 1 to the Whitman Decl., ¶¶ 3-5. Further, Class Representative—whose claims are based on a common course of alleged wrongdoing by defendants and are typical of other Class Members—has no interests antagonistic to the Class. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (adequacy of representation depends on "an absence of antagonism" and "a sharing of interest" between representatives and absent class members).[6] Likewise, Class Counsel has

---

[6]      *See also In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members.").

actively litigated this Action to the brink of trial, resulting in a well-developed understanding of the strengths and weaknesses of the Action, the risks, costs, and delays of trial, and the obstacles to obtaining any recovery—let alone a recovery greater than the Settlement Amount—from Mr. Babich. Class Representative and Class Counsel firmly believe the Babich Settlement represents a favorable result for the Class and warrants approval. ¶ 5; Miller Decl., ¶ 6; *see also Churchill*, 361 F.3d at 576-77 (instructing courts to consider "*experience and views of counsel*") (emphasis in original).[7]

## B.    The Babich Settlement Was Negotiated at Arm's-Length

In the Ninth Circuit, a "strong presumption of fairness" attaches to a class action settlement reached through arm's-length negotiations between "experienced and well-informed counsel." *de Rommerswael v. Auerbach*, 2018 WL 6003560, at *3 (C.D. Cal. Nov. 5, 2018); *Taylor v. Shippers Transp. Express, Inc.*, 2015 WL 12658458, at *10 (C.D. Cal. May 14, 2015) ("A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair."). Here, settlement negotiations were undertaken by experienced counsel on both sides, each with a well-developed understanding of the strengths and weaknesses of their respective claims and defenses.

Following an August 2018 mediation before retired federal Judge Layn R. Phillips of Phillips ADR—which did not resolve any portion of the Action—the parties continued to aggressively litigate the case for nearly two more years. ¶¶ 79-80. Thereafter, while actively preparing for an August 2020 trial, Class Representative and Mr. Babich restarted their earlier settlement discussions. ¶ 80. With the assistance of Michelle Yoshida of Phillips ADR, and after Class Counsel conducted due diligence into Defendant Babich's financial condition and ability to pay, the Settling Parties agreed to resolve the Action against Defendant Babich. *Id*. After reaching their agreement to settle, the Settling Parties,

---

[7]    "Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. This is because parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *Rodriguez v. Bumble Bee Foods, LLC*, 2018 WL 1920256, at *4 (S.D. Cal. Apr. 24, 2018).

while simultaneously preparing for trial, negotiated the specific terms of the Stipulation before moving for preliminary approval. ¶¶ 81-82.[8] This Settlement is "not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Officers for Justice v. Civil Serv. Comm'n of the City & Cty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982).

### C. The Babich Settlement Provides the Class Adequate Relief, Considering the Costs, Risks, and Delay of Litigation and Other Relevant Factors

The remaining Rule 23(e)(2) factors overlap considerably with those articulated by the Ninth Circuit, and all entail "a 'substantive' review of the terms of the proposed settlement" that evaluate the fairness of the "relief that the settlement is expected to provide to" the Class. *See* Rule 23(e)(2), advisory comm.'s note to 2018 amendments; *Churchill*, 361 F.3d at 575-77. To perform such an evaluation, a court must:

> [C]onsider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, [i]t has been held proper to take the bird in hand instead of a prospective flock in the bush.

*Rodriguez*, 2018 WL 1920256, at *3; *see also Moreno v. S.F. Bay Area Rapid Transit Dist.*, 2019 WL 343472, at *4 (N.D. Cal. Jan. 28, 2019) ("considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to a present value"). The Babich Settlement is a favorable result, especially in light of the costs, risks, and delay of further litigation, and the other relevant factors.

### 1. The Risks of Continued Litigation

"To determine whether the proposed settlement is fair, reasonable, and adequate, the Court must balance the continuing risks of litigation (including the strengths and weaknesses of the Plaintiffs' case), with the benefits afforded to members of the Class, and the immediacy and certainty of a substantial recovery." *Velazquez v. Int'l Marine &*

---

[8]    At the Court's direction, the Settling Parties supplemented their motion for preliminary approval of the Babich Settlement on July 29, 2020. Doc. 401.

*Indus. Applicators, LLC*, 2018 WL 828199, at *4 (S.D. Cal. Feb. 9, 2018). While Class Representative and Class Counsel believe in their claims and were prepared to take their case against Mr. Babich to trial, they also acknowledge that doing so posed major challenges and risks.  *In re OmniVision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) ("merely reaching trial is no guarantee of recovery").[9]

### a.    The Significant Risk of Non-Payment

Here, aside from overcoming Mr. Babich's defenses to liability and damages (as discussed below), Class Representative faced significant hurdles to obtaining ***any*** recovery from Mr. Babich ***even if*** a judgment was obtained against him at trial. *First*, Mr. Babich's ability to contribute anything to a settlement or judgment in the Action was severely constrained by his considerable existing financial obligations to federal and state regulators. As a result of his guilty plea in the Criminal Action, Defendant Babich is obligated to pay $74,535,817 in forfeiture and restitution. Doc. 399 at 9-10; Doc. 401 at 1-2. In addition, at the time the Settling Parties entered into the Stipulation, Mr. Babich faced potential monetary consequences of more than $1.4 billion in the aggregate from a Stipulated Consent Judgment with the State of Arizona (Case No. CV2019-010695; the "AZAG Judgment") and a Stipulation for Judgment with the Mobile County Board of Health, pending approval in the Circuit Court of Mobile County, Alabama (Case No. 02-CV-2019-902806.00; the "Alabama Stipulation"). Docs. 401 at 5-6; 401-2, ¶¶ 8.E, 13.[10] *Second*, Mr. Babich was defending himself at the time of settlement against claims in at

---

[9]    Class Counsel is well aware that a securities class action with sound claims can proceed to trial and result in the class recovering nothing. *See, e.g., In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) (overturning jury verdict for plaintiff class, and granting judgment as a matter of law to defendants), *aff'd on other grounds*, *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012).

[10]    The AZAG Judgment provides that if Mr. Babich files for bankruptcy within 120 days of his June 2020 payment of $2,000,000, then such payment ***will not be recognized*** as satisfying Mr. Babich's $644,200,000 in penalties and disgorgement if any creditor, such as Class Representative here, files a petition for relief against Mr. Babich's estate. Doc. 401 at 5-7. In such instance, the State of Arizona would have a claim as to the remaining $642,000,000 under the AZAG Judgment. *Id*. With respect to the Alabama Stipulation, Mr. Babich has agreed to have a judgment entered against him in the amount of $750,000,000 which, if approved, will result in a $750,000,000 claim by Mobile County against Mr. Babich if he files for bankruptcy. Doc. 401 at 6 n.5.

least twenty other actions representing aggregate estimated damages exceeding $3 billion (i.e., the "Concurrent Litigation"), further limiting his ability to pay more here. Docs. 401 at 2-3; *see also* Doc. 401-2 (listing actions). *Finally*, Mr. Babich's insurance carriers have repeatedly denied him coverage in this Action based upon a number of defenses and, as a result, there were no insurance proceeds available to Mr. Babich to fund any portion of a settlement or a judgment obtained against him. Doc. 399 at 10-12.

Indeed, given Mr. Babich's constrained assets and existing financial obligations, a payment from Mr. Babich greater than the Settlement Amount (i.e., the cost of defending the claims against Mr. Babich in the Action to conclusion as estimated by his counsel (Doc. 401-2, ¶ 8)) could create a run on Mr. Babich's currently negative net worth from federal and state regulators as well as the plaintiffs suing him in the Concurrent Litigation—ultimately driving Mr. Babich into bankruptcy. Docs. 401 at 3, 401-2, ¶¶ 13-14. In this instance, Class Representative's claims against Mr. Babich's estate would be, at best, competing with the State of Arizona's and the federal government's aggregate claims of approximately $716 million,[11] all but assuring that Class Representative would receive nothing from a trial victory in this Action

### b.     Risks to Establishing Liability and Damages

As detailed in the Whitman Declaration, Class Representative also faced significant challenges to establishing Mr. Babich's liability and the Class's full amount of damages at trial. With respect to liability, Mr. Babich would have likely asserted, as he did throughout the Action, that the allegedly false or misleading statements attributable to him were forward-looking (and protected by the PSLRA's "safe harbor" provision) and inactionable statements of opinion. Mr. Babich would also have offered evidence suggesting he believed the statements at issue were true when made. ¶¶ 95-96. With respect to loss causation and damages, Class Representative would have to prove that the

---

[11]     And, if the Alabama Stipulation is approved, then Class Representative would be, at best, competing with aggregate claims of more than $1.4 billion against Mr. Babich's bankruptcy estate.

revelation of fraud-related information proximately caused the declines in Insys' stock price in response to the alleged Corrective Disclosures, and that those fraud-related causes could be parsed out from any potential non-fraud related news or publicly released information. ¶¶ 97-102.[12] While Class Representative believes that he could have provided sufficient evidence to support a finding of loss causation and damages at trial, at the time of settlement, Mr. Babich had a pending motion to present and rely upon the expert testimony of Dr. Kapoor's expert, Dr. Smith, positioning the parties' proof on loss causation and damages to result in an uncertain "battle of the experts" before the jury. ¶ 98. *See In re Celera Corp. Sec. Litig.*, 2015 WL 7351449, at *6 (N.D. Cal. Nov. 20, 2015) (risks related to "battle of the experts" favored settlement approval). If realized, any of these litigation risks could have precluded a recovery from Mr. Babich.[13]

### 2. The Amount Offered in Settlement

"[T]he critical component of any settlement is the amount of relief obtained by the class." *Destefano v. Zynga, Inc.*, 2016 WL 537946, at *11 (N.D. Cal. Feb. 11, 2016). However, it "is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Rodriguez*, 2018 WL 1920256, at *4; *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). By definition, a settlement "embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation." *Officers of*

---

[12]     *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345-46 (2005) (plaintiff bears the burden of proving "that the defendant's misrepresentations caused the loss for which the plaintiff seeks to recover"). Among other things, Mr. Babich would have presented evidence, potentially through the prior testimony of David C. Smith, Ph.D. ("Dr. Smith") that: (i) none of the Corrective Disclosures actually "corrected" the Form 10-K Statement; and (ii) none of the Corrective Disclosures revealed "new" information that could explain the price declines on each of those days. ¶¶ 99-100. Mr. Babich also would have argued that Insys' stock price did not suffer a statistically significant decline on January 25, 2016. ¶ 101.

[13]     The third Ninth Circuit factor (i.e., the risk of maintaining class action status throughout the trial) also supports the Settlement, as a court may exercise its discretion to re-evaluate the appropriateness of class certification at any time. *See OmniVision*, 559 F. Supp. 2d at 1041 ("there is no guarantee the certification would survive through trial, as Defendants might have sought decertification or modification of the class").

*Justice*, 688 F.2d at 624; *see also Schaffer v. Litton Loan Servicing, LP*, 2012 WL 10274679, \*11 (C.D. Cal. Nov. 13, 2012) ("Estimates of what constitutes a fair settlement figure are tempered by factors such as the risk of losing at trial, the expense of litigating the case, and the expected delay in recovery (often measured in years)."). Moreover, as the Court has recognized, "settlements must always leave defendants better off than a total liquidation of assets." Doc. 400 at 2.

The Settlement provides for a payment of $250,000 from Mr. Babich's personal assets. As noted above, Mr. Babich's constrained assets and existing financial obligations, as well as his inability to access any insurance coverage, made obtaining anything more than the Settlement Amount highly unlikely. Thus, accepting material proceeds now, rather than pursuing a likely judgment-proof defendant after trial, is in the best interests of the Class. *See, e.g., Singh v. Roadrunner Intermodal Servs., LLC*, 2019 WL 316814, at \*4 (E.D. Cal. Jan. 24, 2019) (noting risk of continued litigation "on defendants' financial condition and, in turn, upon defendant's ability to pay the settlement" as favoring approval of settlement).

Moreover, the Babich Settlement combined with the settlements reached in the Action with defendants Baker and Kapoor will provide the Class with a collective recovery of at least $2.95 million, with the potential to increase to as much as $12.25 million. This collective recovery represents a meaningful percentage of the Class's estimated aggregate damages—ranging from approximately $34.7 million to approximately $189.5 million based on Class Representative's ability to establish damages based on certain of the Corrective Disclosures as estimated by Class Representative's damages expert. Specifically, the collective recovery represents between approximately 1.6% and 8.5% of the Class's aggregate damages (when assessed as a $2.95 million recovery) and between approximately 6.5% and 35.3% the Class's aggregate damages (when assessed as a $12.25 million recovery). At the low end, this recovery range is directly in line with the median ratio of securities class action

settlements to investor losses in recent years as reported by NERA Economic Consulting. On the high end, the recovery range exceeds the median ratio by many multiples. ¶ 11.[14]

### 3.  The Complexity, Expense, and Duration of Continued Litigation

The "expense, complexity and likely duration of further litigation" or "delay of trial and appeal" also should be taken into account when assessing a proposed settlement. *See Churchill*, 361 F.3d at 575; Rule 23(e)(2)(C)(i). Courts have consistently found securities fraud actions "notoriously complex[]" and the settlement of such actions appropriate to "circumvent[] the difficulty and uncertainty inherent in long, costly trials." *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 2006 WL 903236, at *8 (S.D.N.Y. Apr. 6, 2006); *see also In re Heritage Bond Litig.*, 2005 WL 1594403, at *6 (C.D. Cal. June 10, 2005) (class actions have a well-deserved reputation as being the most complex). "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015).

Here, trial was less than a month away when the Settlement was reached. A trial of this Action would invariably be followed by post-trial motions and appeals, resulting in additional years of complex and expensive litigation. *In re Amgen, Inc. Sec. Litig.*, 2016 WL 10571773, at *3 (C.D. Cal. Oct. 25, 2016) ("A trial of a complex, fact-intensive case like this could have taken weeks, and the likely appeals of rulings on summary judgment and at trial could have added years to the litigation."). Further, the expense of litigating this Action for more than four years has been significant, with Plaintiffs' Counsel incurring more than $1.2 million in Litigation Expenses pursuing claims in the Action on behalf of the Class. A trial would have increased those expenses considerably. ¶ 94. *See Hartless v. Clorox Co.*, 273 F.R.D. 630, 640 (S.D. Cal. 2011), *aff'd in part*, 473 F. App'x

---

[14]    *See also* Janeen McIntosh & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2019 Full-Year Review*, NERA Economic Consulting, 20 (Feb. 12, 2020), https://www.nera.com/content/dam/nera/publications/2020/PUB_YEAR_END_Trends_012_120_Final.pdf (finding between 2015 and 2018, the median ratio of settlements to investor losses increased from 1.6% in 2015 to 2.6% in 2018, and declined from 2.6% to 2.1% in 2019).

716 (9th Cir. 2012) ("Considering these risks, expenses and delays, an immediate and certain recovery for class members . . . favors settlement of this action."). This factor weighs in favor of approving the Settlement.

### 4. The Extent of Discovery Completed and Stage of Proceedings

The Babich Settlement was reached after more than four years of litigation, including complete fact and expert discovery. Before reaching the Settlement, Class Representative reviewed and analyzed more than 14 million pages of documents, took or defended sixteen fact and expert depositions, served detailed expert reports pertaining to liability and damages issues, and litigated numerous motions, including defendants' Summary Judgment Motion. ¶¶ 20-73. Indeed, at the time of settlement, the Settling Parties were actively preparing for trial, and had already filed their proposed Final Pretrial Order, their respective in limine motions (and oppositions thereto), and other key pretrial disclosures. Docs. 350-52, 354-58, 361-62, 372, 375-78, 380-81, 392-94. In addition, Class Counsel prepared extensively for the Final Pretrial Conference held on July 9, 2020 (Doc. 390), at which the Court and counsel for the Settling Parties discussed extensively matters relating to the August 2020 trial, including the Court's determination of the Settling Parties' in limine motions. ¶¶ 74-78. Thus, the Settling Parties' respective positions were clear and known, as was the evidence they would use to prove their case, and they had sufficient information to properly assess the Settlement. *See Kmiec v. Powerwave Techs., Inc.*, 2016 WL 5938709, at *4 (C.D. Cal. July 11, 2016) ("[T]he fact that the parties did not settle until after the conclusion of fact discovery indicates that Plaintiffs were well aware of the merits of their case and the difficulties awaiting them at trial."); *Amgen*, 2016 WL 10571773, at *4 (finding "in favor of granting final approval" where discovery was complete and "case was on the verge of trial"). This factor strongly weighs in favor of the Settlement.

### 5. Presence of a Governmental Participant

Although there were regulatory investigations and criminal charges in connection with Insys' off-label marketing of Subsys, there was no parallel action by the SEC. Also,

pursuant to the Class Action Fairness Act ("CAFA"), Mr. Babich was required to provide notice of the Settlement to appropriate state and federal officials. *See* Stipulation, ¶ 20. To date, none of these officials has raised any objection or concern regarding the Settlement. *LinkedIn*, 309 F.R.D. at 589 (finding no objections favored settlement).

### 6. The Reaction of Class Members

Courts in the Ninth Circuit typically consider the class's reaction to the settlement at the final approval stage. *See Morgan v. Childtime Childcare, Inc.*, 2020 WL 218515, at *2 (C.D. Cal. Jan. 6, 2020) ("Lack of objection speaks volumes for a positive class reaction to the settlement."). The deadline for Class Members to object to the Settlement is October 28, 2020. ¶ 12. To date, there have been no objections. *Id*. Class Representative will address objections, if any, in his reply submissions to be filed by November 11, 2020.

### D. The Remaining Rule 23(e)(2) Factors Support Final Approval

Amended Rule 23(e)(2) also instructs courts to consider: (i) the effectiveness of the proposed method of distributing the relief provided to the class, including the method of processing class member claims; (ii) the terms of any proposed award of attorney's fees, including the timing of payment; (iii) any other agreement made in connection with the proposed settlement; and (iv) whether class members are treated equitably relative to each other. *See* Rule 23(e)(2)(C)(ii)-(iv), (e)(2)(D). These factors also support final approval of the Babich Settlement.

*First*, the proposed method of distribution and claims processing ensures equitable treatment of Class Members, whose claims will be processed pursuant to a standard method routinely found effective in securities class actions. A.B. Data will review and process all Claims received, provide Claimants with an opportunity to cure any deficiency or request judicial review of the denial of their Claims, if applicable, and will ultimately mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund, as calculated under the Plan. *See infra* Section III; ¶¶ 109-14. Importantly, none of the Settlement proceeds will revert to Mr. Babich. *See* Doc. 399-1, ¶ 12.

*Second*, in an effort to preserve proceeds of the Babich Settlement for the Class, Class Counsel is not seeking any award of attorneys' fees from the Babich Settlement. Rather, Class Counsel is seeking reimbursement of $75,000 in Litigation Expenses that were not previously sought for reimbursement from either the Baker or Kapoor Settlements, including expenses incurred from July 2, 2020 through July 21, 2020. As detailed in the Expense Reimbursement Memorandum, these expenses were reasonably incurred in prosecuting and resolving the Action. *See OmniVision*, 559 F. Supp. 2d at 1048 ("Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters."). Further, any expense award is separate from the approval of the Settlement, and neither Class Counsel nor Class Representative may terminate the Settlement based on this Court's or any appellate court's ruling with respect to expenses. Doc. 399-1, ¶ 16. *Third*, the Stipulation is the only agreement concerning the Settlement entered into by the Settling Parties.

For the reasons above and in the Whitman Declaration, the Babich Settlement is fair, reasonable, and adequate and, therefore, warrants the Court's final approval.

## III.   THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION

A plan for allocating settlement proceeds under Rule 23 is evaluated under the same standard of review applicable to the settlement as a whole—the plan must be fair and reasonable. *See Class Plaintiffs*, 955 F.2d at 1284; *Amgen*, 2016 WL 10571773, at *7. An allocation formula need only have a "reasonable, rational basis, particularly if recommended by experienced and competent counsel." *Nguyen v. Radient Pharm. Corp.*, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014). "A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable." *In re Oracle Sec. Litig.*, 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994).

The Plan proposed here provides an equitable basis to allocate the Net Settlement Fund among all Authorized Claimants, and was developed by Class Counsel with the assistance of its damages expert. ¶ 111. The Plan (as set forth in Appendix A to the Settlement Notice) is the same plan that Class Representative proposed for approval in

connection with the Baker Settlement, which the Court stated it was "disposed to approve." Doc. 417.

To have a loss under the Plan, a Claimant must have purchased or otherwise acquired Insys common stock during the Class Period and held those shares through at least one of the alleged Corrective Disclosures. ¶ 111. A Claimant's loss under the Plan will depend upon several factors, including the date(s) when the Claimant purchased/acquired their shares of Insys common stock during the Class Period, whether such shares were sold and if so, when and at what price, taking into account the PSLRA's statutory limitation on recoverable damages. *Id.* Losses under the Plan are based upon the estimated amount of artificial inflation in the price of Insys common stock during the Class Period. ¶ 110. Authorized Claimants will recover their proportional "pro rata" amount of the Net Settlement Fund based on their loss. *See In re Audioeye, Inc., Sec. Litig.*, 2017 WL 5514690, at *2 (D. Ariz. May 8, 2017) (finding plan of allocation providing for distribution to claimants on a pro rata basis to be fair and reasonable).

The Plan is similar to those utilized in other securities class actions. *See, e.g., Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at*11 (N.D. Cal. Sept. 4, 2018); *Nguyen*, 2014 WL 1802293, at *5; *Ansell v. Laikin*, 2012 WL 13034812, at *9 (C.D. Cal. July 11, 2012). To date, no objections to the Plan have been filed, warranting approval. ¶ 114.

## IV. SETTLEMENT NOTICE SATISFIED RULE 23 AND DUE PROCESS

Notice of the Babich Settlement satisfied both: (i) Rule 23 as it was "the best notice . . . practicable under the circumstances" and directed "in a reasonable manner to all class members who would be bound by the" Settlement, *see* Rule 23(c)(2)(B), (e)(1)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-75 (1974); and (ii) due process as it was "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

In accordance with the Preliminary Approval Order, A.B. Data mailed Postcard Settlement Notices to the potential Class Members, and Nominees (in bulk), who

previously received the Class Notice and/or notice of the Baker and Kapoor Settlements, as well as any other identified Class Members. A.B. Data also mailed copies of the Settlement Notice and Claim Form to Nominees. *See* Schachter Decl. (attached as Ex. 2 to Whitman Decl.), ¶¶ 3-11. In addition, the Summary Settlement Notice was published in *Investor's Business Daily* and transmitted over *PRNewswire. Id.*, ¶ 12. A.B. Data also updated the Website, www.InsysRXSecuritiesLitigation.com, and toll-free helpline for this matter, with information about the Babich Settlement. *Id.*, ¶¶ 13-14.[15]

The content disseminated through this notice campaign was also more than adequate, as it "generally describe[d] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Young v. LG Chem Ltd.*, 783 F. App'x 727, 736 (9th Cir. 2019). Collectively, the notices provide the necessary information for Class Members to make an informed decision regarding the Settlement, as required by the PSLRA (*see* 15 U.S.C. § 78u-4(a)(7)), and fairly apprises them of their rights with respect to the Settlement. *See, e.g., In re Apollo Grp. Inc. Sec. Litig.*, 2012 WL 1378677, at *3 (D. Ariz. Apr. 20, 2012).

## V.   CONCLUSION

For the reasons stated herein and in the Whitman Declaration, Class Representative respectfully requests that the Court grant final approval of the Babich Settlement and the proposed Plan of Allocation. Proposed Orders are attached.[16]

DATED: October 14, 2020              Respectfully submitted,

**KESSLER TOPAZ**
**MELTZER & CHECK, LLP**

*s/ Johnston de F. Whitman, Jr.*
Johnston de F. Whitman, Jr. (admitted *Pro Hac Vice*)

---

[15]   Copies of the Settlement Notice and Claim Form are also available on Class Counsel's website, www.ktmc.com.

[16]   Per the Court's instruction during the September 23, 2020 hearing in connection with the Baker Settlement, the attached proposed Orders have been combined with the proposed orders previously submitted in connection with the Baker and Kapoor Settlements. Counsel for Defendants have reviewed and approve of the [Proposed] Judgment Approving Class Action Settlements with Defendants Darryl S. Baker, John N. Kapoor, and Michael L. Babich submitted herewith.

jwhitman@ktmc.com
Andrew L. Zivitz (admitted *Pro Hac Vice*)
azivitz@ktmc.com
Jonathan F. Neumann (admitted *Pro Hac Vice*)
jneumann@ktmc.com
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

-and-

Jennifer L. Joost (admitted *Pro Hac Vice*)
jjoost@ktmc.com
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone: (415) 400-3000
Facsimile: (415) 400-3001

*Lead Counsel for Lead Plaintiff, Class
Representative, and the Class*

**BONNETT, FAIRBOURN,
FRIEDMAN & BALINT, P.C.**
Francis J. Balint, Jr.
fbalint@bffb.com
Andrew S. Friedman
afriedman@bffb.com
2325 E. Camelback Road, Suite 300
Phoenix, AZ 85016
Telephone: (602) 274-1100
Facsimile: (602) 274-1199

*Liaison Counsel for Lead Plaintiff, Class
Representative, and the Class*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on October 14, 2020, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to those persons who are CM/ECF registrants:

Don Bivens
dbivens@swlaw.com
Anthony T. King
aking@swlaw.com
**SNELL & WILMER LLP**
One Arizona Center
400 E. Van Buren
Phoenix, AZ 85004
Telephone: 602-382-6513
Facsimile: 602-382-6070

David B. Rosenbaum
drosenbaum@omlaw.com
**OSBORN MALEDON PA**
2929 N. Central Ave.,
21st Floor
Phoenix, AZ 85012
Telephone: 602-640-9000
Facsimile: 602-640-9050

George J. Coleman
gjc@slwplc.com
Michael K. Foy
mkf@slwplc.com
**SALMON, LEWIS & WELDON, P.L.C.**
2850 E. Camelback Road,
Suite 200
Phoenix, AZ 85016
Telephone: 602-801-9060
Facsimile:: 602-801-9070

William Klain
wklain@lang-klain.com
Zachary Rosenberg
zrosenberg@lang-klain.com
**LANG & KLAIN, PC**
6730 N. Scottsdale Road
Suite 101
Scottsdale, AZ 85253
Telephone: 480-534-4900
Facsimile: 480-970-5034

Bahram Seyedin-Noor
bahram@altolit.com
Bryan Ketroser
bryan@altolit.com
Jared Kopel
jared@altolit.com
Ian Browning
ian@altolit.com
**ALTO LITIGATION**
4 Embarcadero Center,
Suite 1400
San Francisco, CA 94111
Telephone: 415-779-2586
Facsimile: 866-654-7207

Brian T. Kelly
bkelly@nixonpeabody.com
Matthew L. McLaughlin
mmclaughlin@nixonpeabody.com
George J. Skelly
gskelly@nixonpeabody.com
**NIXON PEABODY LLP**
Exchange Place
53 State St.
Boston, MA 02109
Telephone: 617-345-1000
Facsimile: 617-345-1300

Russell Piccoli
rp@winazlaw.com
**RUSSELL PICCOLI PLC**
701 N. 44th St.
Phoenix, AZ 85008
Telephone: 480-429-3000
Facsimile: 480-429-3100

*s/ Johnston de F. Whitman, Jr.*